## STATE OF IOWA V. GEORGE COOPER, Appellant.

**Embezzlement:** TITLE TO MONEY EMBEZZLED: *Loan agent.* Defendant was employed by prosecuting witness to procure a loan on mortgage. He obtained the desired sum under an agreement that it should be delivered to prosecuting witness, on execution by him of a first mortgage. Prior to such execution he had appropriated the money to his own use. *Held,* that as the money, when appropriated, belonged to the lender and not to the prosecuting witness, defendant was not guilty of embezzling the money of such prosecuting witness.

*Appeal from Henry District Court.*—Hon. F. W. EICH-
ELBERGER, Judge.

## THURSDAY, MAY 13, 1897.

THE defendant is accused in the indictment of
larceny by embezzlement. From judgment of convic-
tion, sentencing him to serve a term of one year in
penitentiary at Ft. Madison, he appeals.—*Reversed.*

*Palmer & Palmer* and *Carr & Parker* for appel-
lant.

*Milton Remley,* attorney general, for the state.

LADD, J.—The defendant is sixty-four years old,
and has lived in Henry county fifty-nine years, while
the prosecuting witness, Leonard Farr, is eighty-one
years of age, and has resided in the same county since
1848. The defendant's wife is a niece of Mrs. Farr,
who cared for her from infancy to the time of her
marriage, in 1853. From then until the death of Mrs.
Farr, in 1893, the families lived on terms of intimacy
and mutual confidence. In December, 1893, Farr,
who owned considerable land, applied to John F.
Leech for a loan thereon, with which he proposed to
discharge certain obligations. Leech, having failed to
place the loan, suggested that Cooper had said he
believed he could get the money for him. There-
upon Farr applied to defendant, saying he desired him
to negotiate a loan on his farm. The defendant
replied, that he thought he could procure the money
from parties at Villisca, and that he would write
his son and son-in-law, who lived there, to ascer-
tain. When they next met, about two weeks later,
the defendant told Farr he had been to Kansas City to
get a loan of five thousand dollars from Frazier, and

got it. Frazier was an old acquaintance of the defendant and the evidence tends to show that the latter represented himself as having been employed by Farr to negotiate the loan. Frazier and defendant entered into an arrangement by which Fred Cooper, a son of the defendant, and Frazier, were to make a joint loan to Farr of ten thousand dollars, of which each was to put in five thousand dollars. On this understanding, Frazier paid Cooper in February, 1894, five thousand dollars, to be turned over to Farr when a clear first mortgage was executed by the latter, and loaned Cooper two thousand dollars, to be used in making up Fred's part of the loan, and thereafter, in the same month, paid an additional two thousand dollars to the defendant to make up his half of a fourteen thousand dollar loan, which he (defendant) represented would be necessary. The motive in making the loan seemed to be that they might finally obtain the land under the mortgage. The defendant paid Farr one thousand three hundred and ten dollars February 17, one hundred and ninety dollars February 19, two hundred and fifty dollars March 14, three hundred dollars March 19, 1894; and, on the receipt of each sum, Farr executed his promissory note to Cooper, payable one day after date. Upon the receipt of the amounts from Frazier, the defendant appropriated to the payment of his own obligations all not paid to Farr prior to April 11, 1894. On that day, Farr executed his note for seven thousand dollars to Frazier, and a mortgage on his land securing the same, which were delivered, through the defendant, to the latter. As Frazier expected a joint note and mortgage to himself and Fred Cooper of fourteen thousand dollars, he at once investigated, and found the mortgage to be third, instead of first. The defendant thereupon borrowed money, and satisfied one of the prior mortgages by the payment of one thousand, two hundred and fifty-five dollars

and eighty-five cents, and, as surety of Farr, executed a bond to Frazier for the payment of the other at maturity. Of the remaining sum, the defendant claims to hold two thousand dollars on an agreement with Farr that it be paid to the nieces of his first wife. For the retention of the balance, one thousand, six hundred and ninety-four dollars and fifteen cents, the record offers no excuse. The defendant claimed to hold it in order to protect himself as surety on the bond, but this was not agreed to, and the law did not permit; nor is it true, in fact, as he had already used it for himself. The indictment charges that defendant received money belonging to Farr, and fraudulently converted it to his own use.

The mere employment to negotiate a loan will not authorize the receipt of the proceeds thereof by the agent for his principal. Mechem, Ag., section 372; *Austin v. Thorp*, 30 Iowa, 376. This at most, was the limit of Cooper's employment by Farr. Frazier gave the money to the defendant, to be turned over to Farr only upon the execution of a clear first mortgage, and, until this was done, the money remained the property of Frazier. Before the execution of the mortgage on April 11, 1894, Farr could not have maintained an action against either Cooper or Frazier for the amount in defendant's hands. It was Frazier's money up to that time, and Farr had acquired no ownership in it. Before the execution of the mortgage by Farr, the defendant had appropriated all the money received; and it was therefore money belonging to Frazier, and not to Farr, which was embezzled. It is said that Farr's right to the money became absolute when the note and mortgage were delivered and accepted; and doubtless, after that time, he could have maintained an action against either Cooper or Frazier for the balance of the loan, But the crime, if any, was at that time complete. After Cooper had appropriated

Frazier's money, the ratification by Farr could not change his acts, so as to relate back and charge him with appropriating Farr's money instead. The latter had the right, upon the execution of the mortgage, to insist upon the payment of the balance by Frazier before its delivery; and the fact that Cooper had a part of the money would not relieve Frazier from payment. The court directed the jury, in substance, that unless the defendant was agent of Farr, and received the money as such agent, and that, when received, it belonged to Farr, he should be acquitted. Clearly, under this instruction, a verdict of not guilty ought to have been returned. As the money when appropriated belonged to Frazier, and not to Farr, the defendant was not guilty of the offense charged in the indictment, and the judgment must be REVERSED.