## SHERRICK v. THE STATE.

[No. 20,823. Filed November 16, 1906.]

1. CRIMINAL LAW.—*Indictment.—Bill of Particulars.*—Defendant, Auditor of State, indicted for embezzlement of money received and appropriated to his own use, is not entitled to a bill of particulars thereof showing from whom and on what account the different items were received.   p. 348.

2. SAME.—*Bill of Particulars.—Right to.—Appeal and Error.*—Courts have the inherent right to compel the state in a criminal prosecution to furnish the defendant with a bill of particulars, where it is apparent from the peculiar nature of the facts that justice and fair dealing require it, the trial court's discretion therein being subject to review on appeal only for abuse.   p. 350.

3. SAME.—*Indictment.—Bill of Particulars.—Motion to Quash.*—An indictment in this State so uncertain as to require the trial judge to grant an order to furnish defendant a bill of particulars is subject to a motion to quash.   p. 350.

4. SAME.—*Public Officers.—Embezzlement.—Bill of Particulars.*—A public officer charged with the embezzlement of public funds is not entitled to a bill of particulars showing the items of such embezzled funds, since he knows thereof better than the State.   p. 351.

5. EMBEZZLEMENT.—*Evidence.—Officers.—Money.—From Whom Received.*—On an indictment of the Auditor of State for embezzlement the State is not required to prove the source from which the embezzled money was received nor the fund to which it belonged, proof of its receipt, the trust and the conversion of at least a part thereof, being sufficient.   p. 351.

6. APPEAL AND ERROR.—*Briefs.*—*Indictment.*—Where appellant fails to point out, in his brief or oral argument, any specific defect in an indictment, and the court fails to detect any, such indictment will be held good.  p. 352.

7. STATUTES.—*Construction.*—*Criminal Law.*—*Without the Letter, Within the Spirit.*—An act not within the words of a criminal statute cannot be adjudged a crime because it is within the reason or spirit of such statute; and all doubts are resolved in favor of the accused.  p. 354.

8. SAME.—*To Whom Applicable.*—*Embezzlement.*—*Burden of Proof.*—The burden to prove beyond a reasonable doubt that defendant, Auditor of State, is within the statute defining embezzlement, is upon the State.  p. 356.

9. OFFICERS.—*Constitutional.*—*Auditor of State.*—*Duties.*—The Auditor of State is a constitutional officer whose duties must be prescribed by statute.  p. 357.

10. SAME.—*Auditor of State.*—*Duties.*—*Notice.*—*Insurance Fees.* —*Principal and Agent.*—The statutes of the State are conclusive notice to all of the duties of the Auditor of State; and insurance companies paying fees to him under §8477 Burns 1901, Acts 1891, p. 199, §67, simply constitute him their agent to pay same to the State.  p. 357.

11. SAME.—*Auditor of State.*—*Treasurer of State.*—*Duties.*— *Insurance.*—*Payments to Wrong Officer.*—Under §8477 Burns 1901, Acts 1891, p. 199, §67, regulating the business, transacted within this State, of foreign insurance companies, it is the duty of such companies to pay the prescribed fees to the Treasurer of State, a payment to the Auditor of State being a mere private unofficial transaction.  p. 358.

12. SAME.—*Auditor of State.*—*Directing Collection of Money Due State.*—Section 7634 Burns 1901, §5611 R. S. 1881, requiring the Auditor of State to "direct and superintend the collection of all the moneys due the State" does not authorize him to collect on behalf of the State the insurance taxes due from foreign insurance companies.  p. 359.

13. EMBEZZLEMENT.—*Essentials.*—*Auditor of State.*—To convict the Auditor of State of embezzlement the State must show that he converted money belonging to the State, and that such money came into his hands according to law.  p. 359.

14. OFFICERS.—*Auditor of State.*—*Receipt of Insurance Taxes.*— *Assumpsit.*—Payment of insurance taxes to the Auditor of State, under §8477 Burns 1901, Acts 1891, p. 199, §67, does not vest the title to such money in the State until a ratification is made, but such money may be recovered from such officer in an action for money had and received.  p. 359.

15. OFFICERS.—*Auditor of State.—Receipt of Insurance Taxes.—Ratification.*—An action upon the official bond of the Auditor of State for the recovery of insurance taxes received by him, brought subsequently to the alleged conversion, cannot make such prior conversion a crime when it was not one when committed. p. 360.

16. ESTOPPEL.—*Origin.—Purpose.*—Estoppel arises from equitable principles and is designed to aid in dispensing justice, and its purpose is to preserve acquired rights and not to create new ones. p. 361.

17. EMBEZZLEMENT.—*Auditor of State.—Receipt of Insurance Taxes.—Official Capacity.—Estoppel.*—The Auditor of State, indicted for the embezzlement of insurance taxes received by him while in the discharge of his duties as such auditor, is not estopped from showing that the duty of receiving such taxes was not enjoined upon him by the law. p. 362.

18. TRIAL.—*Instructions.—Prejudicial.—Presumptions.*—An erroneous instruction applicable to every count in an indictment is presumed to be prejudicial and therefore reversible error. p. 363.

From Criminal Court of Marion County (36,188); *James E. McCullough,* Special Judge.

Prosecution by the State of Indiana against David E. Sherrick. From a judgment of conviction, defendant appeals. *Reversed.*

*Addison C. Harris, Dan. W. Simms* and *William N. Harding,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, H. M. Dowling* and *W. C. Geake,* for the State.

*John W. Kern, Terhune & Abney* and *Miller, Shirley & Miller, amici curiae.*

HADLEY, J.—The indictment against appellant contained eleven counts. The fifth was for larceny, and all the others for embezzlement. He was acquitted on the fifth, and convicted on each of the other counts.

It is charged in the first count that the defendant, as Auditor of State, being then and there charged and intrusted with the collection, receipt and safe-keeping of

moneys, funds, etc., for the State, did receive for the State, moneys, funds, securities, bonds and choses in action amounting to the sum of $1,000,000, and on June 30, 1905, feloniously converted to his own use $120,000 thereof, and which belonged to the State, the same being a part of the money so received by him as such Auditor. The third count, after charging the official trust and the receiving, as in the first count, alleges that the defendant converted to his own use certain bills, bank checks and drafts of the value of $120,000, the property of the State, a more particular description of which was unknown to the grand jury.

To each of these counts appellant addressed a motion to require the prosecuting attorney to furnish him with a bill of particulars showing the nature of the facts which the State will seek to introduce in support of said counts, and from what source, and from whom, and on what account, the money with which he was charged with embezzling came into his possession, so that the same may be identified. The motion was overruled, and this presents the first question for our consideration. We have in this State what purports to be a complete code of criminal procedure, and in it there is no recognition of a motion for a bill of particulars. §1808 Burns 1905, Acts 1905, pp. 584, 621, §167. Under our code an indictment must contain a statement of the facts constituting the offense in plain and concise language; that is, the facts must be stated in such clear, full and certain manner as reasonably to apprise the defendant of what he is required to meet, and any failure to do this may be reached by a motion to quash. §1835 Burns 1905, Acts 1905, pp. 584, 626, §194. Certainty in the essential facts relied upon by the prosecution being thus secured, our courts, so far as we are advised, have not found it necessary to resort to bills of particulars to preserve the rights of either the State or the

defendant, and we can conceive of no case under our criminal code where such a motion would be proper. Such a practice was wholly unknown to the ancient common law, but as time went on, under a keener sense of fairness to the defendant, it was developed in actions of debt and assumpsit. 3 Ency. Pl. and Pr., 518.

Later the practice was extended to certain criminal cases, wherein it was deemed sufficient to charge the offense in general terms, as being a common barritor, a common scold, and the like. 1 Hawkins, Pleas of the Crown (6th ed.), chap. 81, §13. At a more recent date the practice was, and has continued to be, employed by judges in this country, in jurisdictions where more general and uncertain pleading is permissible, as well as in England, in cases where they have found it necessary to prevent surprise and injustice to the defendant, to require the State to amplify and designate certain subsidiary and evidentiary facts relied upon by the prosecution, and which are not disclosed or indicated by the general language in which the offense is charged. Among the first of such cases was *Commonwealth* v. *Snelling* (1834), 15 Pick. 321, 331, which was a prosecution for libel, and in which Shaw, J., says: "The general rule to be extracted from these analogous cases, is, that where, in the course of a suit, from any cause, a party is placed in such a situation that justice cannot be done in the trial, without the aid of the information to be obtained by means of a specification or bill of particulars, the court, in virtue of the general authority to regulate the conduct of trials, has power to direct such information to be seasonably furnished." Such a bill was also required under an indictment charging the defendant with being a common seller of intoxicating liquors on a particular day. *Commonwealth* v. *Giles* (1854), 67 Mass. 466.

In Florida it was allowed in a prosecution for embezzlement on an indictment under the following statute: "It

shall be sufficient to allege generally in the indictment the embezzlement of money to a certain amount, without specifying any particulars of such embezzlement."

In brief, it may be said that under the adjudications of a number of other states, the right to call for a bill of particulars arises, not from a statute, but from the 2. inherent power of the court, to be exercised in any case, when from the general character of the charge, or peculiar nature of the facts admissible in evidence, it becomes manifest to the trial judge that justice cannot be fully administered, or may become greatly imperiled, without the advanced information obtainable through a bill. Wharton, Crim. Pl. and Pr. (9th ed.), §702; 1 Bishop, Crim. Proc. (3d ed.), §643; *People* v. *Jaehne* (1886), 4 N. Y. Cr. 161; *State* v. *Wooley* (1887), 59 Vt. 357, 10 Atl. 84; *People* v. *McKinney* (1862), 10 Mich. 54; *Commonwealth* v. *Snelling, supra; Westbrook* v. *State* (1899), 76 Miss. 710, 25 South. 491. From the very nature of the right, the power to order or to refuse to order a bill of particulars, it is held, rests within the sound judicial discretion of the trial court, subject to review on appeal only for its abuse. *State* v. *Davis* (1880), 52 Vt. 376; *Thalheim* v. *State* (1896), 38 Fla. 169, 20 South. 938; *People* v. *McKinney, supra; Commonwealth* v. *Shoener* (1904), 25 Pa. Super. Ct. 526, 536; *Commonwealth* v. *Ryan* (1857), 75 Mass. 137; 1 Bishop, Crim. Proc. (3d ed.), §643; Wharton, Crim. Pl. and Pr. (9th ed.), §705.

It may be said, however, that under the certainty required in criminal pleading in this State, whenever a trial judge finds it necessary to the administration of 3. justice to grant a bill of particulars, he has found an ample reason for quashing the indictment for uncertainty.

For a further reason, there was no error in denying the appellant's motion for specifications or particulars. He is

charged with the conversion of moneys, bills, bank checks, and drafts belonging to the State, and which he had in his possession and under his control as Auditor of State. So far as our information extends a bill of particulars was never awarded a public officer as a means of obtaining information as to how, and from whom, and on what account, the property alleged to have been converted came into his hands. Such requirement of the State would amount to a practical denial of the right to prosecute. How can the State, without opportunity, know from whom, and on what particular account, the money was received? A public officer engaged in collecting and disbursing revenues of the State, and whose dealings with the public embrace a large number of persons and a multiplicity of items, and who has the sole supervision of his accounts, occupies a position very different from an agent, clerk, or private person. The work of the latter is usually performed under the supervision and control of the principal, who has, or at any time may acquire, accurate knowledge of names, amounts, and accounts, and thus be in a position to respond to particulars. But the Auditor of State, being his own master, and pursuing his own methods, is the only person who knows, and can know, the details of his office, and is therefore in no position to ask for that information which he has, or has the opportunity to have. *People* v. *McKinney, supra; State* v. *Munch* (1875), 22 Minn. 67, 73.

Furthermore, it is charged in the indictment that appellant as Auditor of State was charged and intrusted with the collection, safe-keeping and disbursement of money, securities, bonds, and choses in action belonging to the State, and as such auditor he did receive, for the purposes aforesaid, money, securities, bonds and choses in action, amounting to $1,000,000, and converted a part to his own use. The State was required to prove the receiving, the trust and the conversion of at

least a part. It was not required to prove the source or persons from whence the money came, or the fund to which it belonged, and from which it was converted. A conversion from one fund constitutes the same crime, and carries the same punishment, as a conversion from any other fund, or from all the funds combined. Hence the information sought could have been of no value to the defendant, because the State was not required to make such proof. *Hollingsworth* v. *State* (1887), 111 Ind. 289; 15 Cyc. Law and Proc., 516, and the large number of cases therein collected; 3 Ency. Pl. and Pr., 529. The court did not err in overruling the appellant's motion for a bill of particulars.

Appellant has assigned error on the overruling of his motion to quash the several counts of the indictment. In his argument, however, both in his brief and orally before the court, he has pointed out no specific objection to either of the counts, and after a careful examination we have failed to find any sufficient reason for holding any of them bad. We therefore pass to what appellant terms the main question. The main question resolves itself into these three: (1) Is the defendant within the class against which the penalty of the statute is denounced? (2) Are the taxes exacted by the State of foreign insurance companies, under the statutes, when solicited and received by the Auditor of State, and in his possession, the property of the State, without an affirmative act of ratification by the State? (3) Having solicited and received payment of foreign insurance taxes, as Auditor of State, will such auditor, in a prosecution by the State for such conversion, be heard to say that the money so received was not the property of the State?

The prosecution is based upon the following statute: "Whoever, being charged or in any manner intrusted with the collection, receipt, safe-keeping, transfer or disbursement of any money, funds, securities, bonds, choses in

action or other property belonging to or under the control of the State   *   *·   *   converts to his own use,   *   *   * in any manner whatever, contrary to law, or uses by way of investment in any kind of property, or loans, either with or without interest, or deposits with any person or corporation, contrary to law, or exchanges for other funds except as allowed by law, any portion of such money, funds, securities, bonds, choses in action or other property, is guilty of embezzlement," etc.   §2034 Burns 1905, Acts 1905, pp. 584, 670, §389.

· The following other statute (§8477 Burns 1901, Acts 1891, p. 199, §67) is involved: "Every insurance company not organized under the laws of this State, and doing business therein, shall, in the months of January and July of each year, report to the Auditor of State under the oath of the president and secretary the gross amount of all receipts received in the State of Indiana on account of insurance premiums for the six months last preceding, ending on the last day of December and June of each year next preceding, and shall at the time of making such report pay into the treasury of the State the sum of $3 on every $100 of such receipts, less losses actually paid within the State, and any such insurance company failing or refusing for more than thirty days to render an accurate [account] of its premium receipts as above provided and pay the required tax thereon shall forfeit $100 for each additional day such report and payment shall be delayed, to be recovered in an action in the name of the State of Indiana on the relation of the Auditor of State in any court of competent jurisdiction, and it shall be the duty of the Auditor of State to revoke all authority of any such defaulting company to do business within this State."

. The question arises upon charge number four, given to the jury of the court's own motion. The court, after setting forth the above statute in full, proceeds: "You will observe that this section of the statute does not in terms

provide to what officer or person the taxes due the State from foreign insurance companies shall be paid; but the section does provide that such taxes shall be paid into the treasury of the State.    *    *    *    If you should believe from the evidence in this case that the defendant directed foreign insurance companies to pay taxes due to the State from them to him, as Auditor of State, instead of to the Treasurer of State, and that he as such auditor received payment of such taxes pursuant to such direction, then the money or funds so received became in his hands the property of the State.  If such moneys were, in fact, under the law properly payable to the Treasurer of State, and the auditor directed them payable to himself, whether innocently or knowingly, it was a violation of duty on his part as an officer or agent of the State, but such violation of duty would not have the effect to deprive the State of the ownership of the money or funds so coming into his hands, and he cannot, under the law, be heard to say, under such circumstances, that the money so coming into his hands is not the property of the State in either a criminal or a civil proceeding against him; and in this cause you should consider such money as the property of the State, as well as all other money or funds due the State which came into his hands under the law as Auditor of State."

First.   It must be determined whether the Auditor of State is within the class against which §2034, *supra,* is directed.   If he is in such class it must be found that he is charged, or in some manner intrusted by law, with the collection, or with the receipt, or with the safe-keeping, or with the transfer or disbursement, of the particular moneys or funds appellant is charged with embezzling.   Whatever the nature of the offense, in interpreting the law we must be guided by that humane rule evolved from centuries of judicial experience, that in criminal procedure, wherein strict construction is required, and everything excluded that is not expressly stated, we are

not permitted to extend a statute to those within the mischief, but not within the purview. In other language, an offense not within the words cannot be adjudged a crime because within the reason.

Chief Justice Marshall, in *United States* v. *Wiltberger* (1820), 5 Wheat. *76, *96, 5 L. Ed. 37, says: "To determine that a case is within the intention of a statute its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of a kindred character, with those that are enumerated."

"Penal statutes are to reach no further in meaning than their words; no person is to be made subject to them by implication; and all doubts concerning their interpretation are to preponderate in favor of the accused." 1 Bishop, Crim. Law, §115. Quoted approvingly in *Johns* v. *State* (1862), 19 Ind. 421, 429, 81 Am. Dec. 408. See, also, Bishop, Stat. Crimes (3d ed.), §190e; McClain, Crim. Law, §85; 2 Hawkins, Pleas of the Crown (8th ed.), chap. 18, §16; *State* v. *Meyers* (1897), 56 Ohio St. 340, 47 N. E. 138; *Moore* v. *State* (1898), 53 Neb. 831, 74 N. W. 319; *State* v. *Bolin* (1892), 110 Mo. 209, 19 S. W. 650; *State* v. *Keith* (1900), 126 N. C. 1114, 36 S. E. 169; *State* v. *Adamson* (1888), 114 Ind. 216. As applied in suits on official bonds, see *Bowers* v. *Fleming* (1879), 67 Ind. 541; *State* v. *Flynn* (1903), 161 Ind. 554. To illustrate: A statute making a county treasurer who converts the public moneys in his custody guilty of embezzlement cannot be extended to embrace his deputy. *State* v. *Meyers, supra.* An officer not charged by law to collect and who has no right to the public money cannot be convicted of embezzling money received under color of his office, though he falsely represented that he was entitled, by virtue of his office, to receive it. *State* v. *Bolin, supra.*

The act of congress which makes it embezzlement for any person employed in the United States mint to convert any of the metals used in coinage, does not apply to a clerk employed, but whose duties had nothing to do with the metals in relation to coinage. *Commonwealth* v. *Hutchinson* (1848), 2 Pars. Eq. Cas. 384. Under the laws of Ohio a county auditor is not an officer charged by law with the possession or custody of money belonging to the state, and an indictment which charged the defendant, a county auditor, with converting money which belonged to the state, "which said money had then and there come into the possession and custody of the defendant by virtue of his office," was an insufficient charge of embezzlement. *State* v. *Newton* (1875), 26 Ohio St. 265. Constructive crimes—crimes built up by courts with the aid of inference, implication, and strained interpretation—are repugnant to the spirit and letter of the criminal law. *Lindsay* v. *Cooper* (1891), 94 Ala. 170, 11 South. 325, 16 L. R. A. 813, 33 Am. St. 105.

When penalties are denounced against a particular class, descriptions of the class, and of the defendant as coming therein, are essential elements of the crime, and must be charged and proved. *Moore* v. *State*, *supra*. We have a statute which provides that whoever, being an officer, or his deputy, having the custody of any record, document, or paper, shall fraudulently secrete or destroy the same shall be guilty of a felony. To sustain a prosecution under this statute for the destruction of a paper of even minor importance it would be incumbent upon the State, not only to allege and prove, but to prove beyond a reasonable doubt, that the defendant was in the forbidden class. The law is not different in principle or application when the offense charged is of greater magnitude.

Second. Are insurance taxes, in the hands of the auditor, the State's money? To provide and to secure a faith-

ful application of the revenues of the State, a vast and complicated machinery has been brought into exercise. There are assessors, boards of review, boards of equalization, boards of county commissioners, county and state auditors, and county and state treasurers, to each of whom is assigned certain and specific duties, which are separate and distinct from the duties assigned to any other, except as to the assessment of omitted property in certain cases. Under the scheme adopted, the law contemplates the faithful coöperation of all of the several agencies as a means of avoiding a confusion of accounts, and of securing accuracy, and the benefit to be derived from a system of checks and balances, and denounces the usurpation by one of the duties allotted to another. It is manifest from the various statutes relating to the subject that it is the policy of our general system that the Auditor of State shall collect and receive no moneys for the State except fees for official services rendered by him. Rather than a receiver of public moneys under the prevailing system, his duties are akin to those of a watchman who stands at the door of the state treasury, and without whose knowledge and consent, except in a few instances, no public moneys can legally get into or out of the state treasury.

The auditor and state treasurer are constitutional officers who "shall perform such duties as may be enjoined by law." Const., Art. 6, §1. The legislature must

9. prescribe all the powers and duties the Auditor of State will be permitted to exercise. He has no duty or authority that is not conferred by statute. And such as he has are given general publicity through public laws. Everybody is bound to know the length and

10. breadth of the auditor's authority. The insurance companies, in this instance, when he solicited the money as for the payment of taxes due to the State, were bound to know that he, as Auditor of State, had no right to collect such taxes, and if they elected to pay through

him, then for that purpose the auditor was the agent of the insurance companies, and not of the State. *Hartford Fire Ins. Co.* v. *State* (1872), 9 Kan. 210. The power of the officers of the government to act for their principals is a matter of public law, and everyone having dealings with them is charged with the legal limitations of their agency, which can be easily ascertained by any one who examines the law. Tiedeman, Com. Paper, §136.

Section 8477 Burns 1901, Acts 1891, p. 199, §67, provides very clearly how, when, and where foreign insurance taxes shall be paid; and the method is in perfect harmony with our long-established general fiscal system. All such insurance companies shall in July and January of each year report to the Auditor of State the gross amount of all premiums received in the State, and shall pay into the treasury of the State the sum of $3 on every $100 of such receipts. The state treasurer is chosen biennially by the people, and at public expense is provided with an office, and spacious and secure vaults for the safe-keeping of the State's money. And everybody knows that paying into the treasury of the State is not accomplished by paying to the Auditor of State. The manner of paying money into the treasury of the State is plainly pointed out by §7664 Burns 1901, §5637 R. S. 1881. By this section "every person [foreign insurance companies as well as others] making payment into the treasury of state shall furnish to the Auditor of State a description of the liability on account of which such payment is to be made [report of all premiums received]; and the Auditor of State * * * shall certify to the Treasurer of State the amount to be paid, and the fund to which it is to be paid, and shall make his draft, in favor of the treasurer, upon the person making the payment, which certificate and draft shall then be presented by such person to the Treasurer of State, who shall receive such money, number, register, file, and preserve such draft and certifi-

cate, and shall give a receipt for the amount paid, specifying the liability on account of which it is paid. And the Treasurer of State is expressly prohibited from receiving any money whatever into the state treasury, or on account of any fund thereof, except it be paid upon a draft as herein provided." Under these statutes there is no ground for saying that appellant, as Auditor of State, was charged or intrusted by law with the collection, and receipt of foreign insurance taxes; and it not being a duty "enjoined by law," if he assumed to collect them, his acts were the acts of an individual, and not of a public officer. *Bowers* v. *Fleming* (1879), 67 Ind. 541; *Warswick* v. *State* (1896), 36 Tex. Cr. 63, 65, 35 S. W. 386.

The contention that the general authority conferred upon the Auditor of State by §7634 Burns 1901, §5611 R. S. 1881, to "direct and superintend the collection of all the moneys due the State" was sufficient to warrant his collection and receipt of insurance taxes, cannot be sustained. The power to direct and superintend the collection cannot, in the presence of direct and positive directions to the contrary, be held to include the power personally to collect and receive.

To constitute embezzlement, under §2034, *supra,* two things must concur. It must be shown that the money converted was the property of the State, and that it came into the possession of the accused according to the law. *Brady* v. *State* (1886), 21 Tex. App. 659, 1 S. W. 462; *State* v. *Johnson* (1878), 49 Iowa 141; *State* v. *Cooper* (1897), 102 Iowa 146, 71 N. W. 197.

We have seen that the money alleged to have been converted could not have reached the hands of the appellant, as Auditor of State, according to law. Hence it did not go into his hands with the authority of the State; and if he did not receive it with the authority of the State, it did not become in his hands the prop-

erty of the State without some act amounting to an acceptance or ratification by the State. McClain, Crim. Law, §648. If the insurance companies paid the money to the accused as their agent, or delivered it to him as the voluntary and assumed agent of the State, to be by him paid into the treasury of the State, until the money was paid into the treasury of the State, or there was some notice of acceptance or ratification of the agency by the State, it was competent for the insurance companies to revoke the agency and recover their money from the accused, as for money had and received. *Johnson* v. *Central Trust Co.* (1903), 159 Ind. 605; *Sheaf* v. *Dodge* (1903), 161 Ind. 270.

The only claim to a ratification by the State is in the institution of an action upon the official bond of appellant to recover the money. But this action was subsequent to the alleged conversion, and could not, when brought, make that act a crime which was not a crime when consummated. Crimes are not created by construction or ratification. 12 Harvard Law Rev., note, p. 56; *Moore* v. *State* (1898), 53 Neb. 831, 74 N. W. 319. Whether such action, if timely brought, would amount to such ratification as would sustain a recovery on the bond, or whether the matter of ratification in such cases rests wholly with the legislature, are matters not necessary to decide, and upon which we intimate no opinion. These considerations lead us to the conclusion that appellant, as Auditor of State, was not charged or intrusted with the collection or the receipt of foreign insurance taxes, and having wrongfully collected them, under the facts in this case, in his hands they were the money of the paying companies, and not the money of the State, nor the subject of embezzlement, as the property of the State.

Third. Is appellant estopped in any element of his defense? The Attorney-General, with great earnestness, argues that appellant, having employed his official name in

soliciting and receiving payment of the insurance taxes, will not be heard to say, under such circumstances, that the money so coming into his hands is not the State's money. In 2 Bishop, Crim. Law (8th ed.), §364, is propounded the following interrogatory: "But why should not the rule of estoppel, known throughout the entire civil department of our jurisprudence, apply equally in the criminal?" He does not assert that the law sanctions estoppels in criminal procedure, and admits that the doctrine is not fully in accord with the adjudications. Some cases, in other jurisdictions, chiefly following the suggestion and argument of Mr. Bishop, are to be found, which in tone appear to support the view insisted upon by the State. But none that has been brought to our attention goes to the limits contended for in this case. The cases cited by the Attorney-General are generally those based on the delinquencies of private agents, clerks, and servants, and embrace the element of broken confidence and want of knowledge of the agent's authority, or cases where the money had reached its ultimate destination, so that the payment was in fact a payment to the principal. The doctrine of estoppel is so novel in criminal procedure, and so inconsistent with the fundamental principles of the criminal law, that such celebrated authors on criminal law as Wharton and Russell, and on the law of estoppel, as Bigelow and Herman, take no notice of it whatever.

Estoppel is purely a defensive weapon, having its origin in equitable principles, and is designed to supplement or to aid the law in accomplishing justice where, without its assistance, injustice may be done. Its purpose is to preserve rights previously acquired; not to create new ones. *Emmons* v. *Harding* (1904), 162 Ind. 154, 160. "Its object," says Cababe, "is to safeguard a transaction between parties, and insure its *bona fide* execution, and to prevent injustice that would otherwise be done. It cannot be used for the purpose of giving

a person an advantage which he would in no case have obtained, nor as a means of indemnifying him against a loss which he would in any case have suffered. Its use is as a shield, and not as a sword." Cababe, Estoppel, 119. The doctrines should be confined to saving harmless or making whole the party in whose favor they arise; and they should never be made an instrument of gain. *Lindsay* v. *Cooper* (1891), 94 Ala. 170, 11 South. 325, 16 L. R. A. 813, 33 Am. St. 105.

In the light of these principles, what facts had the State to rely upon for conviction at the commencement of this prosecution? The State had lost no money by appellant; it had not been deceived nor misled by his conduct or representations. Without some new right, some new advantage, that it did not possess when the prosecution was begun, its case must fail. The Attorney-General argues that, granting the defendant did collect of the insurance companies, without the authority of the law, he did so claiming as Auditor of State the right to collect, and that he should not now, in a prosecution for the offense, be heard to say that he had no right to collect.

The argument followed to its logical conclusion comes to this: The State as the injured party is not entitled to maintain this prosecution, because the money alleged to have been converted was the money of the insurance companies. However, to secure his punishment, the State has the right to invoke the interposition of estoppel to exclude proof of a fact that would establish the defendant's innocence of the particular crime for which he is being tried. Surely it may be said that when an act is criminal only when done by a certain class, a defendant on trial for the crime is not estopped from denying that he belongs to the forbidden class. *Moore* v. *State, supra; Bailey* v. *State* (1899), 57 Neb. 706, 77 N. W. 654.

The constitution of Nebraska requires that all fees for services performed by the auditor of state shall be payable

in advance, not to the auditor, but into the state treasury. The auditor of state collected a large amount of fees for services rendered insurance companies, and converted them to his own use. He was charged with embezzling the state's money, under a statute like ours in all material respects, and which begins: "If any officer or person, charged with the collection, receipt, safe-keeping, transfer or disbursement of the public moneys, or any part thereof, belonging to the state," etc. There was a conviction, and on appeal it was held: (1) That when a penal statute is made to apply only to a certain class of persons, a description of the class is so far descriptive of the offense, and that the person charged is within the class, is a substantive element of the crime itself. (2) The statute relating to embezzlement of public moneys applies only to officers or persons charged by law with the collection, receipt, safe-keeping, or disbursement of public moneys. (3) The auditor is not, as such officer, charged with the collection, receipt, etc., of any part of the public moneys, and is therefore not within the descriptive terms of the statute. (4) An offense not within the words cannot be adjudged a crime because within the reason or spirit, and this principle cannot be evaded by holding that one performing acts which are denounced as a crime when committed by a certain class of people is estopped from denying that he is within that class. *Moore v. State, supra.*

The ninth count of the indictment is based on a certificate of deposit issued by the Farmers & Merchants National Bank of Cicero to David E. Sherrick, dated February 11, 1905, for $7,765.48. There is some evidence going to show that $3,713.04 of the amount was composed of insurance fees belonging to the State, rightfully collected by the defendant for official services rendered, and the balance of said certificate, to wit, $4,052.44, consisted of insurance taxes. It is argued by the Attorney-General that the conviction on this count

should stand for a conversion of the insurance fees. But in the instruction complained of the court defined erroneously the legal status in the hands of the defendant as Auditor of State of the insurance taxes collected by him, and this instruction related to evidence in support of each count of the indictment upon which the defendant was convicted, and we must presume that it was prejudicial to him under each count.

The judgment is therefore reversed, with instructions to grant appellant a new trial.