STATE OF INDIANA *v.* SCHELL.

[No. 30,946. Filed March 10, 1967. Rehearing denied April 18, 1967.]

184

*John J. Dillon*, Attorney General, *Raymond I. Klagiss*, and *Douglas B. McFadden*, Deputy Attorney Generals, for appellant.

*Harry Schell, pro se*, for appellee.

ARTERBURN, C. J.—This is an appeal from a decision of the Lake Criminal Court which sustained appellee's motion to quash the State's indictment for violation of the Public Purchase Act. The indictment was in one count and read as follows:

"The Grand Jurors of Lake County, in the State of Indiana, good and lawful men, duly and legally impaneled, charged and sworn to inquire into felonies and certain misdemeanors in and fore (sic) the body of said County of Lake, in the name and by the authority of the State of Indiana, on their oaths present that beginning on the 14th day of March 1961 and continuing to and including the 19th day of December, A.D. 1961, at said County and State aforesaid, JOHN VIS-CLOSKY, HARRY SCHELL and HAROLD SWEIG were during said entire period of time the duly and legally appointed, qualified and acting members of the Board of Pub-

lic Works and Safety, of the City of Gary, in Lake County, Indiana, and did all during said times constitute said Board of Public Works and Safety of said City of Gary; that as said Board of Public Works and Safety and as members thereof during all of the time they and each of said defendants were members of said board, they and each of them were duly authorized and empowered by law and delegated and entrusted with authority to make purchases of material and materials, equipment, goods and supplies, payment for which was to be made from an appropriation or appropriations of public funds made under the provisions of the budget law of the State of Indiana for various units of city government of the civil City of Gary, Indiana:

"That at and in the County of Lake and State of Indiana, and on various and diverse dates between the date of March 14, 1961, and December 19, 1961, the said JOHN VISCLOSKY, HARRY SCHELL and HAROLD SWEIG acting as members of said Board of Public Works and Safety of said City of Gary, Indiana did then and there unlawfully purchase, on open market, for said civil City of Gary, fuel oil in excess of $1,000.00 to-wit: in the amount of $18,545.00 from General Coal and Oil Company, Inc., the Acme Oil and Supply and Monarch Oil and Supply Co.; that said purchases were made unlawfully by said defendants, in that they were not on a unit basis; were in excess of the amount of $1,000.00; were under two or more contracts and were made without preparing of specifications describing with reasonable particularity the kind, quantity and quality of all fuel oil needed by said City of Gary for the period from March 14, 1961 to December 19, 1961; that said defendants unlawfully failed to give public notice of the time and place for receiving of bids and the letting of contracts for such purchases which purchases were not for current utility bills, all as required by the law of the State of Indiana; said acts of said defendants, then and there being contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

Three persons, members of the Board of Public Works of the City of Gary, were charged in the indictment, including the appellant. The other two pleaded guilty and were sentenced accordingly.

Appellee has made a motion to dismiss this appeal on the ground that the same was not timely filed.

It appears that on September 29, 1965, the trial court sustained appellee's motion to quash the indictment. However, the appellee was not discharged nor were the surities released from their bond. Thereafter the State filed a motion to reconsider the ruling of the court and the court, after another hearing on February 2, 1966, denied the State's motion to reconsider and at that time ordered that appellee be discharged and the sureties on the recognizance bond be released.

It is contended by the appellee that the judgment appealed from was that of September 29, 1965, and not that of February 2, 1966, and therefore the appeal was not filed within time. With this we do not agree. In our opinion, the final judgment was entered on February 2, 1966, when the court, by its order in discharging the appellee and his sureties, indicated a finality in its actions.

Appellee cites *State* v. *McCarthy* (1962), 243 Ind. 361, 185 N. E. 2d 732 for authority that the sustaining of a motion to quash is a final judgment. In that case we said:

"... The mere sustaining of the motion to quash is not a final judgment. It is only where the State has by its appeal *elected to stand* on the charges filed that this court ▪ has treated the sustaining of a motion to quash as a final judgment." (Our italics)

In this case something remained to be done, namely, the discharge of the appellee and the release of his sureties. The State was entitled to be given a reasonable time to file ▪ an amended affidavit or seek a second indictment. The court saw fit also to accept the motion to reconsider and thus the case, as to final determination, was stayed until the final action of the court. We hold, therefore, that the appeal was filed within time.

It is further contended that this appeal should be dismissed for the reason that appellant's petition for extension of time

to file a brief did not comply with the rules of this Court. Rule 2-16 provides that such a petition must be filed at least five days prior to the expiration of the time within which to file briefs and that notice of such request, together with a copy of the petition, shall be served upon the opposite party at any time prior to such filing.

Rule 2-15A provides:

> "*Method of Filing Motions, Petitions and Briefs.* Motions, petitions and briefs will be deemed filed with the clerk or served upon the opposing party or his counsel upon the deposit of the same in the United States mail or with the Railway Express Agency, Inc., charges prepaid, properly addressed to the clerk or to the opposing party or his counsel, as the case may be. In case of filing or service by mail or Railway Express Agency, Inc., a receipt of such deposit or a copy thereof, or return receipts when sent by registered or certified mail, or an affidavit of such mailing or deposit with the Railway Express Agency, Inc., shall be promptly filed with the clerk of this Court.
>
> "In any and all cases where motions, petitions and briefs are served upon the opposing party or his counsel by mail or Railway Express Agency, Inc., the time period specified for the filing of any answers or briefs with the clerk in response thereto shall be extended automatically and without order of Court for an additional period of five (5) days from the date of such deposit in the United States mail or with the Railway Express Agency, Inc."

It is contended that although appellant's brief was filed on April 27, 1966, a copy of such notice and petition was not filed until April 28, 1966, as shown by the post mark on the envelope in which the appellee received such notice and copy of the petition. The due date for appellant's brief was May 1, 1966. However, the appellant filed an affidavit that such notice and copy of petition were deposited in the United States mail on April 27, 1966, although it did not receive a post mark until the next day (April 28, 1966). Rule 2-15A provides that proof of service of a copy of the petition upon the opposing party is complied with by an affidavit showing that the same was deposited in the United

States mail upon a certain date. It is our opinion that the appellant has made proper proof of complying with Rule 2-15A. Therefore the motion to dismiss this appeal is overruled.

We come now to the questions raised by the motion to quash upon which this appeal is sought. It is contended that the indictment is defective for the reason that the words "A true bill" must be written in the handwriting of the foreman, as well as his signature. In this case it is claimed that the words "A true bill" were printed, with a line for the signature of the foreman of the grand jury with such words below it.

The statutes in this respect, Burns' Ind. Stat. Anno. §§ 9-901, 902, provide:

> "9-901. *Indictment—How found.* At least five (5) of the grand jurors must concur in the finding of an indictment; and when so found it must be signed by the prosecuting attorney; and it must also be indorsed by the foreman of the grand jury, 'A true bill,' and he must subscribe his name thereon as foreman."

> "9-902. *Neglect to indorse or sign—Court order.* As soon as the grand jury has returned an indictment into court, the judge must examine it; and if the foreman has neglected to indorse it, 'A true bill,' with his name signed thereto, or if the prosecuting attorney has neglected to sign his name, the court must cause the foreman to indorse it, or the prosecuting attorney to sign it, as the case may require, in the presence of the jury."

We are not impressed with this very technical contention of the appellee. It is a well recognized part of the law that a "signing" may be in a number of different fashions. There is a great deal of common law developed in the interpretation of the Statutes of Fraud and the Statutes of Wills as to what a signing or a signature is. We all know that originally, when few people could write, a seal or stamp was used as a signature, or even a cross for a mark, and in some cases it has been held that initials are sufficient as a signature. There have been cases in which a typewritten name has been held by courts of law as a signature. The prin-

ciple running through all these cases is that if the person intended the mark or the name, printed or written, when it is imprinted upon the document, to be his signature and he so adopts it as his act and intends to be bound thereby, it meets the requirements of the law. The same principle is applicable to the words "A true bill," which the statute requires must be endorsed by the foreman with his signature. *Hamilton* v. *State* (1885), 103 Ind. 96; 80 C. J. S., *Signature*, § 1 (1953); 49 Am. Jur., *Statute of Frauds* § 377 (1943).

It is next contended that the appellee was not subject to the statute upon which the indictment is based. Burns' Ind. Stat. Anno. § 48-1215 provides for the appointment of a Board of Works and Safety by the mayor of the City of Gary. Burns' § 48-1902 provides for the duties of the Board of Works, including the power:

> ". . . To condemn, rent or purchase any real estate or personal property needed by such city for any public use, except when a different provision for purchase is made by this act: Provided, That when a sum of more than two thousand dollars [$2,000] is required to be paid for condemnation, rent or purchase of any real estate or personal property, the same shall not take place unless the condemnation, rent or purchase is specifically authorized by ordinance. . . ." Burns' § 53-501 provides in part that:
>
> "Any person, officer, board, commissioner, department commission, or *purchasing agent, hereinafter designated as purchaser,* duly authorized and empowered by law or delegated and entrusted with authority, to make purchases of material or materials, equipment, goods and supplies. . . ." (Our italics)

for a city may only purchase in the open market when the amount of the purchase is less than One Thousand Dollars ($1,000); otherwise the purchase must be made in accordance with specifications and advertisement.

Burns' § 53-503 provides for the use of State Board of Accounts forms, and finally, Burns' § 53-506 provides for the penalty for non-compliance, with the buying procedure out-

lined by the statute. The appellee cites Burns' § 48-1602, which fixes the duty of the city controller and provides that he shall make payment out of monies appropriated for city purposes. The appellee contends that in reality the city controller is the only one who must comply with the statute relative to purchasing, and that he alone can be liable for such violation, since he alone is the "purchaser." Appellee says:

"Likewise, when the City of Gary pays for material and materials, equipment, goods and supplies, it does so by its controller, who is the purchaser."

It is argued that "there is no legal authority for stating in the indictment that the Board of Public Works and Safety was duly authorized and empowered by law delegated and constituted with the authority to make purchase of material and materials." It is difficult for us to follow appellee's reasons, since Burns' § 48-1902 specifically gives the Board of Public Works of a city the power to purchase, and Burns' § 48-501 specifically says that any such officer or "purchasing agent" must comply with the requirements of the statute set forth. In our opinion, the statute is plainly applicable to members of the Board of Works of a city.

It is next contended that the indictment is indefinite, vague and uncertain. The memorandum to the motion to quash points out that the time and place of the purchases are not specific. We have held numerous times that an allegation that a crime takes place in a county is sufficiently specific, as well as an allegation of a time fixed within the period of the Statutes of Limitation. Acts 1905, ch. 169, § 192, p. 584, being Burns' Ind. Stat. Anno. § 9-1127 provides that no indictment shall be quashed:

"Second. For the want of an allegation of the time or place of any material fact, when the venue and time have once been stated in the indictment or affidavit." *State* v. *Carrier* (1965), 235 Ind. 456, 134 N. E. 2d 688; *Hammond et al.* v. *State* (1960), 240 Ind. 313, 164

N. E. 2d 640; *Ewbanks' Indiana Criminal Law*, Symmes Ed. Vol. 1. sec. 174 (1956).

It is next contended that the "amount" of fuel oil which was purchased is not set forth. Whether the appellee means the number of barrels, gallons or the amount of its value in money is not pointed out. The indictment does fix the amount of value as $18,545.00. A valuation fixed in an indictment for larceny is sufficiently specific and we think in this case the violation fixed here is sufficiently specific.

It is next contended that the indictment sets forth more than one violation of separate and distinct statutes. The statutes involved must be read together, since Burns' § 53-506 fixes the penalty for violation of Burns' § 53-503. We have held two or more violations of the same statute, joined in the same count, are not necessarily improper. In *Brogan* v. *State* (1927), 199 Ind. 203, 156 N. E. 515, we stated:

> "An indictment or affidavit is not bad for duplicity for joining in one count, as one offense, offenses committed at the same time by the same person as parts of the same transaction, and subjecting defendant to the same punishment."

The true test of an indictment is whether the material averments thereof are stated with sufficient certainty to apprise the defendant of the nature and character of the charge against him so that he cannot be charged again with the same offense and so that he may plead former jeopardy if he is so charged again. *Kennedy* v. *State* (1935), 209 Ind. 287, 196 N. E. 316; *Lodyga* and *Mantych* v. *State* (1931), 203 Ind. 494, 179 N. E. 542.

The State cannot be compelled and should not be forced to set out evidence in a criminal charge, but the ultimate facts

only are to be alleged, with sufficient certainty to meet the requirements stated above. *Sherer* v. *State* (1919), 188 Ind. 14, 121 N. E. 369.

In our opinion, the trial court erred in sustaining the motion to quash the indictment. The judgment of the trial court is reversed, with directions to set aside the order sustaining the motion to quash and enter an order overruling the motion to quash.

Jackson, J., concurs in result.

NOTE.—Reported in 224 N. E. 2d 49.