HAROLD E. DEFRIES *v.* STATE OF INDIANA.

[No. 975S223. Filed February 26, 1976.]

*Ralph Bower, Stephen Bower,* of Kentland, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellant's conviction for aggravated assault was affirmed by the Court of Appeals in an opinion appearing at 319 N.E.2d 837. Appellant petitioned this Court for transfer and oral arguments were heard. A majority of this Court concurs in the result reached by the Court of Appeals, and we now adopt their opinion as follows:

"HOFFMAN, CHIEF JUDGE.

"This appeal arises from a judgment of conviction entered against appellant Harold E. Defries (Defries) upon a charge of aggravated assault and battery. Following trial by a jury, Defries was sentenced to a term of imprisonment for not less than one nor more than five years. Upon the overruling of appellant's motion to correct errors, he perfected this appeal.

"The facts and inferences most favorable to the State in the record establish that at approximately 10:30 P.M. on the night of June 9, 1973, appellant Defries was driving south on Weston Street in a residential area in Rensselaer, Indiana, at a high rate of speed and in an intoxicated condition. At this time, a group of children were playing in or near the west lane of Weston Street south of its intersection with Oak Street; due to a street light at the intersection, the children were visible from a distance of one block. As Defries approached the intersection from the north, he was seen by Jim Osborn (Osborn), who was approaching the intersection on Oak Street. Defries then failed to stop at the intersection, thereby obliging Osborn to stop to avoid him.

"One of the group of children, Jerry Justice (Jerry) had decided a few moments before Defries' arrival at the inter-

section to leave the group of children, and had crossed to the east side of Weston. Jerry's 9-year old sister, Rhonda, then apparently decided to follow him across the street. When she crossed the street, Rhonda placed herself in the path of Defries' auto as it sped through the intersection straddling the center line. Defries skidded approximately sixty-eight feet before striking Rhonda and throwing her an additional sixty-seven feet from the point of impact. In all, Defries' vehicle skidded ninety-six feet before stopping. His speed as he traveled through the intersection was estimated at from 50 to 60 miles per hour.

"After striking Rhonda, Defries stopped momentarily, turned his headlights off, and then proceeded south to the point where she had come to rest upon the pavement. Defries then hastily left the area and returned to his home, whereupon he picked up a neighbor and returned to the scene of the injury. Once back at the scene, Defries advised Police Officer Robert R. Duncan, 'I'm the one, I hit her', and was placed under arrest.

"On appeal, Defries first challenges the adequacy of the affidavit under which he was charged. This question was presented to the trial court in a motion to quash,[1] and has been properly preserved for appeal.

"The standards of specificity of indictments and charging affidavits in effect at the time the appellant herein was charged, and the reasons therefor, are well stated in *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686 at 690:

> " 'In this state, the offense charged in the indictment must be stated with such certainty that the accused, the court, and the jury may determine the crime for which conviction is sought. IC 1971, 35-1-23-25 [Burns' Ind. Stat. Ann. § 9-1126 (1956 Repl.)]; Thomas v. State (1968), 251 Ind. 76, 238 N.E.2d 20; rehearing denied; *See also* Noel v. State (1966), 247 Ind. 426, 215 N.E.2d 539, rehearing denied. The defendant must be given sufficient information to enable him to prepare his defense and to assure that he will not twice be put in jeopardy for the same crime. Ind. Const. art. I, § 13; *See* State v. Brown (1935), 208 Ind. 562, 196 N.E. 696. However, certain details may be omitted and a motion to quash may properly be denied unless the indictment is so uncertain and

---

"1. The function of the former motion to quash is now fulfilled by the motion to dismiss, under new provisions of the Indiana Code enacted in 1973. See: IC 1971, § 35-3.1-1-4, Ind. Ann. Stat. § 9-906 (Burns 1974 Supp.) and IC 1971, § 35-3.1-1-8, Ind. Ann. Stat. § 9-910 (Burns 1974 Supp.).

indefinite that the nature of the charge cannot be ascertained. IC 1971, 35-1-23-26 [Burns' Ind. Stat. Ann. § 9-1127 (1956 Repl.)] Kennedy v. State (1935), 209 Ind. 287, 196 N.E. 316 rehearing denied.'

"The affidavit in question charges Defries with the crime of aggravated assault and battery substantially in the language of the statute, IC 1971, 35-13-3-1, Ind. Ann. Stat. § 10-410 (Burns Supp. 1974), while also alleging the identity of the victim and the date of the offense. It is appellant's contention that the gravamen of the offense is that Defries operated a motor vehicle in such a wanton and reckless manner that his aggravated injury of another in so doing may be deemed willful. Appellant further asserts that because the crime involves the reckless operation of a motor vehicle, the affidavit must contain:

" '[s]pecific allegations of what facts exist which make it appear that the injury (or death) was due to the reckless disregard of the safety of others.' Appellant's brief, p. 19.

"However, the authorities cited by appellant in support of this contention are inapposite in that they pertain to the crimes of reckless homicide and involuntary manslaughter. It is true that the unlawful act or act of reckless driving which proximately caused a death must be alleged in an affidavit charging involuntary manslaughter or reckless homicide because the existence of a proximate relationship between such acts and a death is the gist of these crimes as delineated by their respective statutes. In contrast, the gist of the offense of aggravated assault and battery as delineated by IC 1971, 35-13-3-1, *supra,* is the willful, unlawful infliction of great bodily harm and disfigurement upon another. The affidavit here at issue stated these elements of the offense plainly and with certainty.

"Appellant's contention on this point must be considered to be that because the State intended to prove his criminal intent by inference from certain of his reckless acts, he is entitled to be advised of such acts through the affidavit by which he is charged. Such contention is erroneous. The existence of criminal intent as a state of mind in an actor is an ultimate fact which may be inferred by the trier of fact from the circumstances surrounding an act as revealed by the evidence. See *Farno* v. *State,* (1974) 159 Ind. App. 627, 308 N.E.2d 724, and cases cited therein. However, the evidentiary facts from which such ultimate facts must be proved need not be alleged in an indictment or affidavit. *State* v. *Schell,* (1967) 248

Ind. 183, 224 N.E.2d 49. Therefore, the omission from the charging affidavit herein of the specific acts from which the appellant's intent was inferred by the trier of fact cannot be regarded as improper. Furthermore, Defries has not demonstrated any prejudice to his rights or his defense by reason of such omission to the trial court, in his briefs to this court, or upon oral argument.

"The next issue which must be considered is whether the trial court erred in overruling appellant's motion for mistrial made following a reference by a witness to a breathalyzer test. Defries made a pre-trial motion in limine, which was granted by the trial court, prohibiting, in part, reference to his refusal to submit to a breathalyzer test. The testimony objected to occurred during the State's case-in-chief as follows:

" 'Q. Could you tell the, the jury how you came into contact with the defendant, or where you came in contact with him?

" 'A. Yes, sir. I came in contact with the, with Mr. Defries at the office of the County Jail. And prior to that I had been on patrol and I was contacted by the Dunes Park Post to go to the jail that there had been a request for a breathalizer operator—

" 'MR. BOWER: To which I object and move that the counsel be instructed that there is a motion and that he has invaded by this witness and this Court to the prejudice of this defendant. I not only move that the conduct of the counsel but also of the witness, and that that jury be instructed and also request a mistrial.

" 'THE COURT: Will counsel approach the bench? (Counsel and the Court having a discussion at the bench.)

" 'THE COURT: The objection is sustained and motion denied.'

"Inasmuch as the appellant's motion in limine requested only that the State not offer evidence '[t]hat the defendant refused to submit to a breathalyzer', it is difficult to perceive how the above quoted testimony invaded the trial court's order thereon. The substance of the testimony admitted was that the officer came into contact with Defries when he came to the jail following a request for a breathalyzer operator. Surely the jury could not have concluded from this statement that the appellant refused to submit to a breathalyzer test. Additionally, it must be noted that there is substantial eyewitness testimony herein showing appellant's intoxication following the injury.

"The granting or denial of a motion for mistrial rests within the sound discretion of the trial court, and its ruling will be overturned only upon a showing of abuse of that discretion. *Prather* v. *State*, (1973) 158 Ind. App. 61, 301 N.E.2d 667. And, this question must be decided upon the facts of each case. *White* v. *State*, (1971) 257 Ind. 64, 272 N.E.2d 312. In view of the very slight, or more probably nonexistent, effect of the testimony in question upon the jury, it cannot be said that the trial court abused its discretion in failing to grant appellant's request for a mistrial. Additionally, assuming arguendo, that an error was committed by the trial court, we would be compelled to conclude that the error was harmless.

"The third issue which must receive consideration herein involves the appellant's lack of a valid driver's license at the time of the injury. An additional portion of appellant's motion in limine requested the trial court to proscribe references to the fact that appellant's driver's license was suspended. The trial court denied this portion of such motion and later admitted testimony that when Defries was asked to produce a driver's license at the sheriff's office, he could not do so.

"While the appellant's inability to produce a license at that time is immaterial with respect to the issue of the existence or degree of his recklessness, for which it must have been offered, it must be concluded that the admission of this evidence was harmless error. The State did not attempt to show that his license had been suspended, nor that he had previously committed arguably reckless criminal acts resulting in the suspension. Rather, it was only shown that he did not produce a license at a particular time. This equivocal evidence could not have prejudiced the appellant by contributing to the verdict and, thus, cannot warrant reversal. *Mitchell* v. *State*, (1972) 259 Ind. 418, 287 N.E.2d 860; *Keesier* v. *State*, (1900) 154 Ind. 242, 248, 56 N.E. 232.

"Appellant's next two assertions of error both involve the sufficiency of the evidence herein to support his conviction and, therefore, will be treated together.

"It is to be noted that when questions concerning the sufficiency of evidence are presented on appeal, this court may consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. Further, it is not our function to weigh the evidence or determine the credibility of witnesses. *McAfee* v. *State*, (1973) 259 Ind. 687, 291 N.E.2d 554. It has been held that a conviction may be sustained upon circumstantial evidence

alone ·so long as the evidence is of such probative value that a reasonable inference of guilt may be drawn therefrom. *Gregory* v. *State,* (1972) 259 Ind. 295, 286 N.E.2d 666. A conviction which rests in whole or in part upon such evidence will not be reversed unless this court can state as a matter of law that reasonable persons, whether they be the jury or the trial court, could not form inferences with regard to each material element of the offense so as to ascertain a defendant's guilt beyond a reasonable doubt. *Guyton* v. *State,* (1973) 157 Ind. App. 59, 299 N.E.2d 233.

"The elements of aggravated assault and battery as stated in IC 1971, 35-13-3-1, *supra,* are an intentional and unlawful infliction of great bodily harm upon another. *Priola* v. *State,* (1973) 260 Ind. 117, 292 N.E.2d 604. The record clearly discloses that great bodily harm was inflicted upon Rhonda Justice. Officer Robert Duncan stated that upon arriving at the scene of the injury, he observed that Rhonda had a 'serious head wound.' Fur- ·thermore, the physician who examined Rhonda upon her arrival at the Jasper County Hospital emergency· room found 'a large jagged laceration of the forehead' as well as a 'fracture of the femur.' Clearly this evidence is sufficient to permit the trier of fact to find that great bodily harm was inflicted upon her. *Priola* v. *State, supra.*

"As to the intent necessary to sustain appellant's conviction, it must be noted that our Supreme Court has allowed intent to commit assault and battery to be inferred in similar circumstances. See: *Bleiweiss* v. *State,* (1918) 188 Ind. 184, 119 N.E. 375. The holding on this point in Bleiweiss is well explained in *Radley* v. *State,* (1926) 197 Ind. 200, at 203-204, 150 N.E. 97, at 98, as follows:

" 'The intent to touch unlawfully may be inferred from the intentional doing of an act the probable result of which will be a rude or insolent touching of the person of another. Thus, if a man should intentionally drive his car into a crowd of people in the street at such a rate of speed that it was not probable they would all get out of the way, and thereby should drive over or against any of them, the inference that he intended to strike somebody with his car could reasonably be drawn from the fact that he intentionally drove into the crowd in that manner. *State* v. *Schutte,* (1915) 88 N.J. Law 396, 96 Atl. 659.

" 'And the fact that a person intentionally drove his automobile at an unlawful rate of speed along a city street across an intersecting street on which there was much travel, and past what he "knew was a very dangerous

corner," and in passing the corner ran against a motorcycle on the cross street, was held to support an inference of unlawful intent in striking the driver of the motorcycle. *Bleiweiss* v. *State*, (1918) 188 Ind. 184, 119 N.E. 375, 122 N.E. 577. But, while there may be a civil liability for damages caused by an unlawful striking, whether the act was done wilfully or negligently, there can be criminal responsibility only where it was done intentionally. [Citation omitted.] And an intent to injure may not be inferred from a lack of ordinary care, nor will mere proof of a negligent touching or striking support an inference that the negligent act was done with unlawful intent. [Citations omitted.] To create a civil liability there need be nothing more than a lack of ordinary care, which causes an injury to another. But to make one criminally responsible for such an injury there must be wilful, intentional conduct, whose tendency to injure is known, or ought to be known, accompanied by such wanton and reckless disregard of the probable harmful consequences to others as to imply the infliction of a wilful, intentional injury. *Luther* v. *State, supra,* on page 626 [(1912), 177 Ind. 619, 98 N.E. 640] ; *Dunville* v. *State,* (1919) 188 Ind. 373, 379, 123 N.E. 689.'

"The evidence herein that appellant drove his automobile through a stop sign at 50 to 60 miles per hour in an intoxicated state, toward a group of children visible for a distance of one block, while forcing an automobile on an intersecting street to stop to avoid him shows his reckless disregard of the probable harmful consequences to others while he intentionally committed acts which had a known tendency to injure. Accordingly, the jury's finding that appellant had the requisite intent may not be disturbed by this court.

"The final issue presented by appellant concerns the propriety of the trial court's refusal to give his Tendered Instruction No. 8 to the jury. The instruction stated, in essence, that mere inadvertance [sic] in appellant's driving would not support a conviction of aggravated assault and battery. Even assuming, without deciding, that such an instruction was required in this case, the substance of appellant's instruction was covered by the following portions of the court's Final Instruction No. 8 :

" 'You are further instructed that to find the defendant guilty of aggravated assault and battery or assault and battery there must be evidence of criminal intent. But the intent may be inferred from the circumstances which legitimately permit it. *Intent to injure may not be implied from a lack of ordinary care. * * *.*

" 'Such circumstances must show there was willful, intentional conduct whose tendency to injury (sic) is known, or ought to be known, accompanied by a wanton and reckless disregard of the probable harmful consequences from which others are likely to suffer, *so that the whole conduct together is one of the nature of a willful, intentional wrong.*' (Emphasis supplied.)

"Thus, this allegation of error cannot warrant reversal. *Martin* v. *State*, (1973) 260 Ind. 490, 296 N.E.2d 793.

"No reversible error having been shown, the judgment of the trial court must be affirmed.

"Affirmed.

"Garrard and Staton, JJ., concur."

We grant transfer to comment further upon the intent required to sustain a conviction of aggravated assault.

Appellant was charged with violating Ind. Code § 35-13-3-1, Burns § 10-410 (Supp. 1974), which provides:

"Whoever intentionally or knowingly and unlawfully inflicts great bodily harm or disfigurement upon another person is guilty of aggravated assault and battery and upon conviction shall be imprisoned in the state prison for not less than one [1] year nor more than five [5] years, to which may be added a fine in any amount not to exceed one thousand dollars [$1,000]."

The major premise of appellant's argument is that the above statute requires a specific intent to inflict great bodily injury. In support of this contention, appellant has referred us to cases from Iowa and Arizona.

In *State* v. *Richardson*, (1917) 179 Iowa 770, 162 N.W. 28, the defendant was allegedly driving his vehicle, which was unequipped with lighting, after dark through an Iowa dust storm at an excessive rate of speed. While so driving, he ran over the leg of one Horn, who was kneeling beside his vehicle attempting to fix a flat tire.

Richardson was charged with aggravated assault under § 4771 of the IOWA CODE of 1897 (Supp. 1913), which provided:

"*Assault with Intent to Inflict Bodily Injury.* If any person assault another *with intent to inflict a great bodily injury,* he shall be imprisoned in the county jail not exceeding one year, or be fined not exceeding five hundred dollars, or be imprisoned in the penitentiary or reformatory not exceeding one year." [Emphasis added.]

Under the Iowa statute, "The intent in the mind of the assailant, and not the act in fact committed . . . constitutes the gist of the aggravated offense." *State* v. *Mitchell,* (1908) 139 Iowa 455, 116 N.W. 808; see also Perkins, *Abridged Indictments and Informations,* 12 IOWA L. REV. 226-29 (1927). Hence, this statute is designed to punish an active mental state, and the statement in *Richardson* that ". . . no negligence, no matter how reckless, can supply specific intent to injure a named person" is entirely correct.

When comparing the Iowa statute under which Richardson was charged with the Indiana statute under which appellant was charged, it is instructive to ponder the following observation made by the *Richardson* court:

"Defendant is not being tried under a possible statute which may be conceded to be valid were it enacted. He is not accused of having feloniously, willfully, and unlawfully injured Horn, *but of having assaulted Horn with intent to inflict upon him a great bodily injury* . . . ." 179 Iowa 770, 778, 162 N.W. 28, 31 [emphasis added].

Richardson, who neither knew nor saw Horn prior to striking him, and thought that he had run over some small obstruction, "like part of a tire, lying in the road," might have been guilty of an assault, but was not guilty of the offense charged because he did not have the requisite intent.

In *State* v. *Balderrama,* (1964) 97 Ariz. 134, 397 P.2d 632, cited by appellant in support of his petition for transfer, a conviction for assault with a deadly weapon (automobile) was reversed. The statute under which Balderrama was charged, § 13-249 of ARIZONA REV. STAT., provided:

"A person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, shall be

punished by imprisonment in the state prison for not less than one nor more than ten years, by a fine not exceeding five thousand dollars, or both."

The Arizona Supreme Court conceded that there were occasions on which an automobile might be used as a deadly weapon, but refused to hold that the automobile was *per se* a deadly weapon. The effect of the holding was to prohibit prosecutions under the statute of drivers who were drunk or otherwise criminally negligent. In reaching its decision, the court specifically overruled its earlier case of *Brimhall* v. *State,* (1927) 31 Ariz. 522, 255 P. 165, which upheld a conviction for aggravated assault of a driver who drove at night without headlights on the wrong side of the road, and at an unlawful speed. ARIZONA REV. STAT. § 13-245 (A) (5) defines an aggravated assault as:

"A. An assault or battery is aggravated when committed under any of the following circumstances:

\* \* \*

"5. When a serious bodily injury is inflicted upon the person assaulted."

In overruling *Brimhall,* the Arizona Supreme Court made clear the policy basis upon which it acted:

"There is today no necessity for the courts to torture statutes to cover the modern problems presented by the automobile." 397 P.2d 636.

In examining the law of the above jurisdictions, we also had an opportunity to review *People* v. *Hopper,* (1917) 69 Colo. 124, 169 P. 152. In that case, W. J. Hopper was charged with assaulting Frank W. Beard with a deadly weapon, to-wit, an automobile, with intent to commit a bodily injury upon the person of Beard. Hopper was charged under § 1658 of COLORADO REV. STAT. of 1908, which provided:

*"Assault to commit murder, rape, mayhem, robbery, larceny —Deadly weapon—Penalty.*

"SEC. 51. An assault with an intent to commit murder, rape, mayhem, robbery or larceny shall subject the offender to confinement in the penitentiary for a term of not less

than one year nor more than fourteen years. An assault with a deadly weapon, instrument or other thing, *with an intent to commit upon the person of another a bodily injury* where no considerable provocation appears or where the circumstances of the assault show an abandoned and malignant heart, shall be adjudged to be a high misdemeanor, and any person thereof duly convicted shall be fined in a sum not exceeding two thousand dollars and imprisoned not exceeding one year in the county jail." [Emphasis added.]

The Colorado Supreme Court held that:

". . . there was no evidence of a specific intent on the part of the defendant to commit a bodily injury either upon the party injured or any other person, and the defendant could not be convicted of an assault with intent to commit a bodily injury as charged in the information."

Under the Colorado statute, like the Iowa statute, the circumstance which makes the assault aggravated is the mental state of the actor.

From the foregoing, it will be noted that there are two basic forms of aggravated assault statutes. In the first type, illustrated by the Colorado and Iowa laws set out above, the "aggravating" circumstance is the particular state of mind of the actor, specifically, to do great bodily harm to the victim. Under such a statute, battery is not required for a conviction. Under the second type statute, the "aggravating" circumstance is not the actor's wicked intent, but, rather, the seriousness of the unpermitted touching. Technically, it is a misnomer to refer to such a statute as an *assault* of any kind, for clearly, a rather serious battery is required to sustain a conviction. This type of statute is evidenced by ARIZONA REV. STAT. § 13-245(A)(5), *supra*. It is also evidenced by Ind. Code § 35-13-3-1, Burns § 10-410 (1974 Supp.), *supra*. Our statute requires that great bodily harm or disfigurement be *inflicted*. One who merely intends to tie up his victim and pound him about the head with a meat tenderizing tool has not committed the crime of aggravated assault in Indiana. On the other hand, if one throws a piece of chalk at the legendary

victim with an eggshell skull, and the chalk strikes the victim and fractures his skull, the perpetrator would be guilty under our statute even though he did not intend to do great bodily harm.

The Iowa and Colorado decisions are not persuasive here, for the statutes under which those decisions were rendered were written in language which has traditionally been recognized as requiring specific intent. Moreover, it cannot be said that the General Assembly was unfamiliar with such language when they adopted the aggravated assault statute in 1963. *See, e.g.,* Ind. Code § 35-1-54-4, Burns § 10-403 (1974 Supp.) [Assault and Battery with intent to Gratify sexual desires or appetites] ; Ind. Code § 35-1-54-3, Burns § 10-401 (1974 Supp.) [Assault or Assault and Battery with intent to commit a felony] ; Ind. Code § 35-13-2-1, Burns § 10-401a [Assault or Assault and Battery with intent to kill].

The Arizona decision does not support appellant's contention that our aggravated assault statute requires proof of a specific intent. The Arizona case is representative, however, of the view that criminal negligence arising from the use of an automobile, as a matter of law, should not satisfy the general mens rea requirements of assault and battery statutes which do not require a specific intent. The Arizona decision was not handed down until after the General Assembly adopted our aggravated assault statute, but the position taken by the Arizona Supreme Court was not a novel one. One writer remarked in 1928:

"As soon as the automobile came into common use statutes were enacted in the various states forbidding with more or less degree of particularity 'reckless' driving and providing small fines for violation. But with the tremendous increase in the use of automobiles the violations became more frequent and the dangers to people on the highways greater. Faced with the realization that the ordinary reckless driving statute was not very effective as a deterrent, the courts, believing that an increase in penalty would in a measure decrease the evil, began to convict under the assault and battery statutes, simply because the penalty in the

latter case was more severe. Thus, a reckless driver, lucky enough to escape injuring someone will, if he gets caught, suffer a small fine; but another, who injures a person while driving in exactly the same way, is more likely both to get caught and suffer a more severe penalty. In both cases the conduct of the defendant is the same. Aside from the fact that in the case of assault and battery someone is injured, the sum total of the difference in the two crimes is to be found in the penalties. The courts having taken it upon themselves to weigh the efficiency of the penalties ascribed by the legislatures for reckless driving, have come to the conclusion that they are not efficient, and, acting on the assumption that a more severe penalty will act as a greater deterrent, have increased the penalty by the simple process of squeezing the case into the most easily accessible category—assault and battery. Although the machinery creaks and groans, the courts are stoical in their insistence that the extra burden be carried. Policy so demands.

\* \* \*

". . . It is submitted that, because of its various connotations, the term 'intent' has lost such a great part of what once may have been descriptive properties, that the operation of arriving at a result is no more than a process of pure logic, which hides from view problems of penal policy which should be squarely faced by the courts. A defendant injures someone while driving 'recklessly.' It is possible to make major or minor premises of the proper stuff to get a conviction for reckless driving, assault and battery, or assault with intent to inflict injury. But premises are not self-creative. A choice must be made. When a court decides that a reckless driver intended to inflict injury and is therefore guilty of assault and battery which carries with it a penalty of six months in jail, when it could have found him guilty of violating a simple reckless driving statute or ordinance, it is in fact saying:

" 'In our opinion, drivers of automobiles, as a class, will react in accordance with the severity of the punishment. The legislature has specifically provided a penalty to cover cases like this which, in our opinion is not severe enough. There are altogether too many accidents caused by reckless driving. Increase of the penalty to 6 months will have its effect on decreasing the number of accidents. Therefore, the defendant is guilty of assault and battery.'

"Such a process of arriving at results is more intelligent than the one of seemingly doing nothing but finding that the defendnat 'intended' to inflict the injury and is, there-

fore, guilty of assault and battery." Tulin, *The Role of Penalties in Criminal Law,* 37 YALE L.J. 1048; 1057, 1059-60 (1928).

In addition to this pointed criticism, we believe the legislature was clearly aware of the line of Indiana cases toward which such criticism might be levied. Commencing with *Luther* v. *State,* (1912) 177 Ind. 619, 98 N.E. 640, this Court adopted the "fictionalized" holding that criminal negligence is a functional equivalent for general mens rea. In view of the disjunctive language in the statute, i.e., "intentionally or *knowingly and unlawfully,*" we believe the General Assembly desired to fully implement this case law when it created the new offense of aggravated assault. Thus, the Court of Appeals, through Judge Hoffman, correctly stated the law with regard to the requisite intent for aggravated assault.

Transfer is granted and the decision of the trial court, for the reasons stated in the opinion of the Court of Appeals'. decision, is in all matters affirmed.

Givan, C.J., Arterburn, J., concur; Prentice, J., dissents with opinion in which DeBruler, J., concurs.

## DISSENTING OPINION

PRENTICE, J.—Emotionally, this is a very difficult case because it is apparent from the record that the defendant (appellant), by his drunken driving struck and seriously injured a small child. My inner feelings are that he received no more than he deserves. I have no compassion for him. However, I have no right to judge his appeal other than according to my understanding of the applicable law, and it is my opinion that the majority opinion is in error in two respects.

## REQUISITE INTENT

The majority opinion relies upon *Bleiweiss* v. *State,* (1918) 188 Ind. 184, 119 N.E. 375, 122 N.E. 577, wherein this Court affirmed a conviction on a charge of simple assault and battery

upon evidence that the appellant accidently struck the prosecuting witness with his automobile, not by mere negligence but rather through intentional recklessness showing a disregard for the safety of others. We held in that case that the criminal intent requisite to the offense could be inferred from the intentional acts done under circumstances that disclosed such a disregard. Affirmance of the defendant's conviction requires us to extend this doctrine, a legal fiction, one step further and to infer not only the general intent or *mens rea* but also the further specific intent to do "great bodily harm" to the injured child.

The defining of crimes in this state is the exclusive province of the Legislature. True, the courts must interpret the statutes and in so doing must sometimes resort to legal fictions in order to carry out the legislative intent. Fictions have traditionally been concocted to serve the ends of justice, but unfettered, they are inclined to wander into areas where their observance may defeat rather than serve the cause; and, as was said in *Hammond* v. *Pennsylvania Railroad Co.,* (1959) 31 N.J. 244, 156 A.2d 689, "* * * should be contained by the reason for their invention."

Affirmance of the defendant's conviction establishes a precedent for intolerable consequences. By the same fiction employed therein, the crime of arson could be found by inferring the specific intent to set a fire from a wanton but wilful act of smoking in a prohibited area and a resultant fire. Since the prevention of fires is the purpose of most regulations prohibiting smoking in certain public places, if no fire resulted, the specific intention to set a fire could, nevertheless, be inferred from the wilful violation of the regulation and the violator could be found guilty of attempted arson.

Under Burns § 10-401, Ind. Code § 35-1-54-3 and Burns § 10-401a, Ind. Code § 35-13-2-1, guilt is not necessarily predicated upon a resultant injury or a death, and a battery is not required. Thus, under the fiction, even if no one had

been injured in the accident, indeed even if there had been no accident at all, the reckless driving of the defendant, which clearly was wilful and wanton and in disregard of the safety of others would support an inference of the specific intent to injure or to kill and the defendant could have been convicted of assault with intent to commit to felony or of assault with intent to kill.

The element of intent is the same factor in murder in the second degree as in aggravated assault, except that in the one it is to kill and in the other it is to injure. Therefore, had the injured child been killed, an application of the inferred intent fiction would have rendered the defendant guilty of second degree murder, because the malice of murder is equally as inferable as is the intent. Or, if we chose, we could just as logically infer the premeditation required in murder in the first degree from the deliberate and continuing reckless driving that permitted time and opportunity for deliberate thought after the inferred intent had been conceived.

If two young men agreed to race their automobiles upon a public roadway (a misdemeanor) and met by agreement at the agreed starting point but were stopped by the police and abandoned the game, before it commenced, are they guilty of a conspiracy to commit a felony? I believe not. Yet, if I follow the inferred intent fiction, I would have to acknowledge that an injury to some person would have been a possible, if not probable, consequence of the race. Therefore, had the race taken place, the intent to do such injury would have been inferable from the wilful participation, and a felony would have been committed. The plan having been to do that which, by such fiction, would have been a felony—and an overt act having been done towards its consummation, they are, thereby, guilty of the conspiracy.

From the foregoing, it may be seen that the intentional or voluntary commission of a criminal act is a far different thing from the intention to produce a particular criminal result.

It is one thing, therefore, to infer an intent to do the act from the doing of it but quite another thing to infer the intention to produce the specific consequences. The words of the inferred intent doctrine fit both situations. The application of the doctrine to find that an act done recklessly and wantonly was done intentionally is but to say that the law regards such recklessness and wantonness as intolerable as criminal intent and therefore its equivalent. This is necessary to the cause of justice and is, therefore, acceptable. The existence of an intention to accomplish a specific result, however, is inconsistent with reckless and wanton conduct. If one desires a specific result, he sets in motion the forces that will accomplish it with design and deliberation, mental processes that are inapposite to recklessness and wanton disregard. Holding otherwise does not further the cause of justice but creates an intolerable anomaly.

Following the adoption of the opinion of the Court of Appeals, Justice Hunter writing for the majority has distinguished this case from *State* v. *Richardson*, (1917) 179 Iowa 770, 162 N.W. 28 and *People* v. *Hopper*, (1917) 69 Colo. 124, 169 P. 152. The distinction has been made to illustrate that there are two types of aggravated assault statutes—one supposedly designed to punish the wicked in heart and the other to vindicate dire consequences of accidents, notwithstanding that the perpetrator's heart may have been pure.

The Indiana statute requires a serious injury as an essential element of the crime. That is clear, even without the majority's explanation. What is not clear is how the clearly expressed requisite intent to do the injury can be dispensed with. That we have done as much before is not, to me, justification for doing it again.

Only five assault and battery cases have come before this Court arising out of automobile accidents, and they arose in the span of approximately twelve years from 1912 through 1925, and I think it is significant to note their progression.

The first of such cases was *Luther* v. *State,* (1912) 177 Ind. 619, 98 N.E. 640. There, the appellant accidently struck a bicyclist with his automobile. There was evidence only that the vehicles collided while the appellant was overtaking the bicyclist and no evidence that he was at fault. This Court reversed the conviction because of the absence of any evidence of intent on the part of the appellant. In the process, however, it stated that intent could be inferred from circumstances legitimately permitting it, from intentional acts done under circumstances showing a reckless disregard for the safety of others and a willingness to inflict the injury or from the commission of an unlawful act which leads directly and naturally to the injury.

In 1913, *Schneider* v. *State,* found at 181 Ind. 218, 104 N.E. 69, was decided on authority of the dicta in *Luther* v. *State, supra,* the conviction of simple assault and battery was affirmed with a statement that intent was a question of fact to be determined by the jury—a careless statement, at best, in view of the facts related which were only "* * * that appellant ran an automobile against the person of the injured party * * *."

*Bleiweiss* v. *State, supra,* was decided in 1918. There the accident was caused by the excessive speed of the appellant's automobile over a principal street in a residential section of Indianapolis. The dicta of *Luther* became the law, and we observed, "There is evidence in this case which tends to show that appellant was operating his machine in violation of * * * Acts 1913, p. 779, § 14, and with a reckless disregard for the safety of others." The statute cited required the giving of a timely signal with a bell, horn or other device upon approaching an intersecting highway, curve or corner where the operator's view is obstructed. No penalty was provided for violation of this section. The criminal intent was inferred upon the fiction that a person intends the natural and probable consequences of his unlawful and reckless acts.

In *Singer* v. *State*, (1923) 194 Ind. 397, 142 N.E. 864, the circumstances were similar to those of *Bleiweiss*. There was evidence that the appellant was operating his automobile at a speed which was excessive under the existing conditions. We there held that the trial court could have found that the appellant acted with reckless disregard for the safety of others and that from such reckless disregard the court was justified in finding that his act was done with an unlawful intent and was not mere negligence.

In 1926, we distinguished the facts in *Radley* v. *State,* 197 Ind. 200, 150 N.E. 97, from those of *Bleiweiss, supra.* The appellant's automobile, after overtaking a street car which was slowing to a stop in order to pick up a passenger, struck the would be passenger as she stepped from the curb into the street to board the car. The trial court convicted, but we reversed saying that the evidence disclosed only a lack of ordinary care which could not support an inference of unlawful intent.

The foregoing case law of Indiana is reflective of American case law generally upon the subject, although some states have refused to apply the implied intent or inferred intent fiction to support to charge of simple assault and battery arising out of negligence. The reluctance has been even greater when the charge was a statutory form of aggravated assault, and at least two courts have held that although the criminal intent to commit an unlawful act could be inferred from the intentional doing of an act that is "wanton and grossly negligent," *(People* v. *Hopper, supra)* or from "driving in such a reckless, imprudent manner as to be utterly indifferent to the safety of others," *(State* v. *Richardson, supra)*, the specific intent to do the injury could not be so inferred.

It will be recognized that the cases above reviewed arose with the emergence of a new social problem. The advent of the automobile brought with it an inherent risk of injuries to persons and to property not previously encountered and against which no combative legal mechanism had yet been

designed. It is apparent that the application of the inferred intent fiction was a natural consequence of the court's accommodation of the problem. Doubtlessly the concept was influenced by a consideration of the aspects of manslaughter, and this is acknowledged in *Luther* v. *State, supra,* although it appears that the first manslaughter case arising out of an automobile accident did not appear in this Court until 1916. *Smith* v. *State,* (1917) 186 Ind. 252, 115 N.E. 943. Such influence was misplaced, however, because manslaughter has never required the intent requisite to an assault, either at common law or under our statute, the wording of which was taken verbatim from the common law.

The Acts of 1913 provided the first statutes relating to the safe operation of motor vehicles. For the most part the proscriptions were specific and, except for "drunk driving" which provided a fine not exceeding fifty dollars and "hit and run" which was made a felony, the penalties were limited to fines not exceeding twenty-five dollars. Acts 1916, ch. 299, §§ 13, 14, 15, 16 and 19.

In 1925, the first "reckless driving" statute was enacted, and it became unlawful to operate a motor vehicle upon a public highway "in a reckless or dangerous manner and so as to endanger the life, limb or property of any person." A fine of not less than twenty-five dollars nor more than five hundred dollars to which could be added imprisonment for not more than one year was provided. This was a penalty in excess of that provided for assault and battery, thus it is not surprising that prosecution for assault and battery arising out of reckless driving fell into disuse. Manslaughter charges became more prevalent, however, as it was no longer necessary to charge voluntary manslaughter and to prove inferentially the requisite intent by evidence of a wilful and reckless disregard. *Roby* v. *State,* (1938) 215 Ind. 55, 17 N.E.2d 800.

The awareness of the Legislature to the need for laws conducive to safe driving was next illustrated by enactment

of the reckless homicide statute. Acts 1939, ch. 48, § 52, Burns § 47-2001, Ind. Code § 9-4-1-54. Experience had demonstrated that, except in extreme cases, juries were reluctant to impose the severe penalty provided for manslaughter for an accidental death caused by the negligent operation of an automobile. The same act re-defined the offense of reckless driving to require a "reckless disregard" as opposed to an operation "in a reckless or dangerous manner" and reduced both the maximum fine and the maximum imprisonment therefor. Chapter 48 did not encompass reckless homicide and reckless driving alone but was a comprehensive enactment of laws for highway safety. It has since been amended, from time to time, as changing conditions appear to require. Conspicuous by its absence, however, is a "reckless injury" provision, and we are drawn to the following passage from *State* v. *Richardson, supra.* "We may assume * * *, that the Legislature could declare that if any injury short of death be inflicted through the reckless operation of a motor vehicle, * * *, without reference to intent, it shall constitute the crime of assault with intent to inflict great bodily injury upon the one who was injured. It has not so declared. We may so assume the Legislature could enact a statute prescribing a punishment greater than fixed for reckless driving if such injure one upon a highway. There is, as yet, no such statute."

In view of the specific statutes covering reckless driving and homicide by reckless driving and numerous other statutes proscribing that which creates hazards upon our public roadways, I do not assume that the Legislature's failure to create a crime of "reckless injury" has been a mere oversight during all of the years since 1939; nor do I believe that the ends of justice require us to legislate one judicially by extension of a legal fiction. By so doing, the majority might well have created more problems than we can solve, and this is particularly true in view of the settled policy of this state making the jury the exclusive judge of the weight of the evidence and of the reasonable inferences to be drawn therefrom.

It is not necessary for us to pass upon the correctness of the early cases cited herein that upheld convictions of simple assault and battery upon the inferred intent doctrine. The procedure has fallen into disuse in light of later legislative enactments, and is unlikely to cause further concern. The extension of the doctrine of those cases, however, into the area of crimes requiring an intention to effect a specific result is, in my opinion, an unwarranted and dangerous incursion into the exclusive province of the Legislature.

## SUFFICIENCY OF CHARGING AFFIDAVIT

Upon this issue, the majority, by adoption of the Court of Appeal's opinion affirmed the trial court's denial of the defendant's motion to quash the charging affidavit. The opinion quoted from *Blackburn* v. *State,* (1973) 260 Ind. 5, 11, 291 N.E.2d 686, 690, which is a correct statement of the standards of specificity for indictments and charging affidavits. In the posture in which this case was argued upon the motion, tried and affirmed, however, those standards were not met. The majority opinion upon the motion to quash issue and the majority opinion upon the sufficiency of the evidence issue are inapposite. Had the case been a traditional aggravated assault case, I would agree that the affidavit was sufficient. In the context of this case, however, it was insufficient.

Accepting, for purposes of argument, that the offense of aggravated assault can be committed by the mere commission of an unlawful act and resultant serious injury, i.e. the specific intent to injure is not a requisite, then the offense is essentially the same as involuntary manslaughter (an unlawful act resulting in an accidental death) and reckless homicide (reckless disregard resulting in death) and must be subjected to the same rules of pleading with regard to certainty.

Some crimes may be charged in the language of the statute, others may not.

"Ordinarily the description of an offense in the language of the statute is sufficient, and if the statute defines an

offense and states specifically what acts constitute it an indictment or affidavit in the language of the statute may show that the statute has been violated. * * * But where the statute uses general terms and does not specify what acts shall constitute the offense forbidden, it is not sufficient merely to use the language of the statute, but the pleader must state the particular facts in the case." Ewbanks Ind. Crim. Law (Symmes Ed.) § 171 and cases there cited.

"Involuntary manslaughter does not belong to that class of crimes that may be charged in the language of the statute. When the affidavit or indictment is based upon the commission of an act which is unlawful because it is negligent, the allegations must allege facts by which it is made to appear that the act was done wantonly or with reckless disregard for the safety of others, and it must further appear that such act was the proximate cause of the death." *State* v. *Beckman,* (1941) 219 Ind. 176 at p. 185, 37 N.E.2d 531.

"Reckless homicide, under the statute referred to above, is a form of involuntary manslaughter and doesn't belong to the class of crimes which may be charged in the language of the statute. Facts must be alleged which make it appear that the death was due to reckless disregard of the safety of others." *Rogers* v. *State,* (1949) 227 Ind. 709 at p. 715, 88 N.E.2d 755.

Assault and assault and battery were crimes at common law and were adopted by statute. There was no common law crime of aggravated assault. Having an established meaning at common law, therefore, the crimes of assault and assault and battery could be charged in the language of the statute without elaboration. Further, if we regard the statutory crime of aggravated assault as but a traditional assault and battery with the additional element of a resultant great bodily harm, it appears that it could also be charged in the language of the statute, without more. But, if the statute is to encompass great bodily harm resulting not from specific intent but from conduct that is unlawful because it is negligent or wilful and wanton, it follows that such conduct would have to be alleged with the same particularity required in charges of involuntary manslaughter and reckless homicide.

At oral arguments, this point was raised and disposed of

by a brief comment to the effect that the defendant could have filed a motion to make more specific if he felt himself in need of the particulars. The law is very clear that there is no such thing as a motion to make more specific in criminal law pleading and that uncertainty and indefiniteness may be reached only by a motion to quash.

The fourth statutory ground for a motion to quash is that the indictment or affidavit does not state the offense with sufficient certainty. Burns § 9-1129.[1]

A motion to make more specific does not raise any question under our criminal practice. *Hinshaw* v. *State,* (1919) 188 Ind. 447, 455, 124 N.E. 458; *Sunderman* v. *State,* (1925) 197 Ind. 705, 706, 151 N.E. 829. See also *Watt* v. *State,* (1968) 249 Ind. 674, 234 N.E.2d 471.

It has also been decided that a motion for a bill of particulars is inappropriate under such circumstances in that the necessity for such a bill is ample reason to quash the charge for uncertainty. *Sherrick* v. *State,* (1906) 167 Ind. 345, 350, 79 N.E. 193.

The majority opinion misses this point completely. It acknowledges that the unlawful act or acts which proximately caused a death must be alleged with reference to involuntary manslaughter or reckless homicide but fails to recognize the similarity of those crimes to the crime of aggravated assault when permitted to encompass reckless injury. In distinguishing the cases, the majority holds, "In contrast, the gist of the offense of aggravated assault and battery * * * is the wilful, unlawful infliction of great bodily harm * * *. The affidavit here at issue stated these elements of the offense plainly and with certainty." The certainty required is not simply that the defendant be made aware of the crime with which he is charged. Rather, it requires that he be advised as to why he is so charged. The last quoted statement of the

1. Repealed by Acts, 1973, Pub. L. No. 325 § 5. For present law, see Ind. Code § 35-3.1-1-4(9) (Burns 1975).

majority opinion could be applied with equal logic to the offenses of involuntary manslaughter or reckless homicide, but from the foregoing it is clear that an indictment alleging that the defendant involuntarily killed a named person in the commission of some unlawful act would not be a sufficient charge of manslaughter, and an affidavit alleging that the defendant drove a vehicle with reckless disregard for the safety of others and thereby caused the death of a named person would not be sufficient as a charge of reckless homicide notwithstanding that such allegations plainly state the elements of the offenses.

The judgment of the trial court should be reversed.

DeBruler, J., concurs.

NOTE.—Reported at 342 N.E.2d 622.