TOMMIE LEE NEELEY *v.* STATE OF INDIANA.

[No. 3-772A36. Filed June 26, 1973. Rehearing denied July 26, 1973. Transfer denied January 2, 1974.]

*Anthony V. Luber* of South Bend for appellant.

*Theodore L. Sendak,* Attorney General, and *Lynda F. Huppert,* Deputy Attorney General, for appellee.

## I.

### STATEMENT ON THE APPEAL

STATON, J.—Tommie Lee Neeley was charged by affidavit with committing bodily injury upon a police officer.[1]  He

1. IC 1971, 35-21-4-2; Ind. Ann. Stat. § 10-1005a (Burns 1972 Supp.):

entered his plea of not guilty and waived a trial by jury. The trial court found Tommie Lee Neeley guilty of the offense and sentenced him to ". . . the custody of the Department of Corrections for a period of not less than one year nor more than five years, . . ." Neeley's defense counsel had filed a motion for special findings and conclusions prior to trial and had filed the same motion prior to sentencing. Both motions to apply civil Rule TR. 52(A) of the Indiana Rules of Procedure, IC 1971, 34-5-1-1, to Neeley's criminal proceeding were denied by the trial court. Neeley's motion to correct errors raises these two issues for our determinations:

1. Was there sufficient evidence to sustain the conviction?
2. Did the trial court err in overruling Neeley's motion for special findings and conclusions?

Our opinion concludes that there was sufficient evidence to sustain the conviction of Tommie Lee Neeley and that the trial court did not commit reversible error when it overruled Neeley's motion for special findings and conclusions. We affirm the judgment of the trial court.

## II.

## STATEMENT OF THE FACTS

Officer Vinson G. Smith was on canine patrol on the night of November 14, 1971 in South Bend, Indiana when he received a call to aid several officers who were attempting to impound a car at 113 North Chicago. When he arrived, he saw numerous patrol cars and a group of people. Officer Smith testified:

---

"Whoever shall draw, use or attempt to use a firearm, deadly or dangerous weapon, or commit a bodily injury upon any peace or police officer of this state, or upon any person assisting such peace or police officer knowing him to be such officer or person assisting such peace or police officer, while assaulting, resisting, opposing, obstructing, preventing, impeding or interfering with any peace or police officer, when such officer is arresting or attempting to arrest any person, or while such officer is engaged in the execution of any of the duties of such officer, shall be deemed guilty of a felony, and, upon conviction thereof, shall be imprisoned for a period of not less than one [1] year nor more than five [5] years, or fined not to exceed one thousand dollars [$1000] or both."

". . . I parked my car close to the scene where there were people. There was a group of people, the police officers and colored subjects—male and female. I got out of my squad car and went in front of, I believe, 113 North Chicago where the officers and the people were having loud discussions. I seen a car up in the yard, right next to the house. It was parked—the car was in very few feet of the house on the lawn. I just stood there listening to the discussions. The people were on the sidewalk with the police officers on the street. At this time, a tow truck came to get the car parked in the yard. At this time, other officers around me had started walking away and there was a short stocky woman among the people that were there. She was very high tempered. She was upset and I started talking to this woman. She was insistent they were not going to take this car. I told her that she could come down to the Police Department and talk to the Desk Sergeant if she wanted to. At this time, she grabbed me by the front of my shirt. I pulled her arm off and stated to her that she was under arrest and turned my back to the crowd that she was in. As soon as I turned around, and turned her around, I was struck from numerous people. I let this woman go. I had a night stick which at this time was probably in my hand and I started swinging. I don't know if I hit anyone. From the sequence where people were hitting me, the next sequence I remember laying on the ground with the defendant on top of me striking me with his fists. I don't know how many times he hit me. It was more than one time. I seen an officer running towards me and told him to get him off me. I had the defendant by the hair with my right hand. The officer swung a night stick but hit my hand across my knuckles. At this time the defendant got up and ran around to the rear of the house with Officer Switalski and myself in pursuit. Officer Switalski fired a shot in the air and the defendant disappeared among the bushes, trees and so forth. . . ."

Officer Smith further testified that while he was on the ground, Neeley hit him four or five times. After chasing Neeley, Officer Smith had to be taken to the Memorial Hospital by his fellow officers where he was confined for two weeks with head injuries and body bruises.

Officer Puecker testified:

"Q. Okay. At the time you saw Officer Smith on the ground, where was the defendant at that time?

"A. He was on top of him, standing over him in a bent position, swinging both fists.
"Q. Hitting him?
"A. Yes.
"Q. Did you see him hit him?
"A. I did.
"Q. How many times?
"A. Approximately four or five times.
"Q. Did you see anyone else hit Officer Smith at that time?
"A. There were two at his head—I don't know if they were holding him down—they might have been hitting him, too.
"Q. The man you saw hitting Officer Smith, at that time, do you know who he is?
"A. Yes.
"Q. Can you identify him?
"A. Yes.
"Q. Is he present in the Courtroom?
"A. He is.
"Q. Would you point him out, please?
"A. Sitting right there. (Pointing to defendant)"

Before the commencement of the trial and prior to sentencing, Neeley made a motion for special findings and conclusions. Both motions were denied by the trial court. Neeley's motion to correct errors raises two issues which are fully set forth below.

## III.

### STATEMENT OF THE ISSUES

Two issues will be discussed in our "Statement on the Law" section. These issues are:

1. Was there sufficient evidence to sustain the conviction?
2. Did the trial court err in overruling Neeley's motion for special findings and conclusions?

## IV.

### STATEMENT ON THE LAW

ISSUE ONE:

"In reviewing the sufficiency of the evidence to support this conviction, this court may not weigh the evidence nor

weigh the evidence nor determine credibility of the witnesses. We may only look to the evidence and reasonable inferences flowing therefrom which support the findings of the trial court. The conviction must be affirmed if there is evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt." *Shank* v. *State* (1972), 154 Ind. App. 147, 289 N.E.2d 315, 317. Also see *McKinley* v. *State* (1972), 258 Ind. 348, 281 N.E.2d 91, 92 and *Harris* v. *State* (1972), 258 Ind. 341, 281 N.E.2d 85, 86.

Neeley's primary concern with the sufficiency of the evidence is that there was no direct proof of any bodily injuries inflicted upon Officer Smith by Neeley. Neeley was a member of a belligerent, raucous and violent group. Overt physical violence was displayed and visited upon Officer Smith by this group.[2] There is direct evidence that Neeley stood over Officer Smith while he was on the ground and that Neeley was swinging both fists in an attempt to do bodily injury to Officer Smith.[3] Officer Smith testified that Neeley struck him four or five times. Officer Puecker testified that he saw Neeley hit Officer Smith four or five times. Officer Switalski testified that he had to use a night stick on Neeley to get him off of Officer Smith who was lying on the ground. This evidence is sufficient to identify Neeley with the group and to single him out as an individual perpetrator of the bodily injury upon Officer Smith. Officer Smith's testimony concerning his head injuries and bodily bruises which necessitated hospitalization for a period of two weeks is evidence from which the trial court could have inferred that Officer Smith suffered bodily

2. Neeley need not be charged as an accessory. IC 1971, 35-1-29-1; Ind. Ann. Stat. § 9-102 (Burns 1956). See also *Workman* v. *State* (1939), 216 Ind. 68, 78, 21 N.E.2d 712; *Schmidt* v. *State* (1970), 255 Ind. 443, 452, 265 N.E.2d 219.

3. Black, BLACK'S LAW DICTIONARY 221 defines bodily harm as: "Any touching of the person of another against his will with physical force, in an intentional, hostile and aggressive manner, or a projecting of such force against his person. . . . Any impairment of physical condition of another's body or physical pain or illness, but does not include minute disturbance of nerve centers caused by fear, shock or other emotion."

injuries not only from the group of which Neeley was a member but from the four or five blows delivered by Neeley while Officer Smith was on the ground. We find the evidence overwhelmingly sufficient to support the conviction.

ISSUE TWO: Neeley contends that his motion for special findings and conclusions should have been sustained by the trial court. This proposition of law suggests that civil Rule TR. 52(A) of the Indiana Rules of Procedure is applicable to criminal cases.[4] Rule TR. 52(A) is as follows:

> "(A)  *Effect.* In the case of issues tried upon the facts without a jury or with an advisory jury, the court shall determine the facts and judgment shall be entered thereon pursuant to Rule 58. Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury (except as provided in Rule 39[D]) shall find the facts specially and state its conclusions thereon. The court shall make special findings of fact without request:
>
> (1)  in granting or refusing preliminary injunctions;
> (2)  in any review of actions by an administrative agency; and
> (3)  in any other case provided by these rules or by statute.
>
> "On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a master, and answers to questions or interrogatories submitted to the jury shall be considered as findings of the court to the extent that the court adopts them. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusion appear therein. Findings of fact are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(B) (dismissal) and 59(E) (motion to correct errors)."

---

4.  The following cases have held that civil discovery rules are inapplicable in criminal cases. *Lander* v. *State* (1958), 238 Ind. 680, 154 N.E.2d 507; *Bernard* v. *State* (1967), 248 Ind. 688, 230 N.E.2d 536.

When considering the applicability of civil rules to criminal cases, it must be remembered that the Supreme Court of Indiana has the inherent power to adopt, amend and rescind rules affecting both civil and criminal procedure as well as to ". . . give viability to new rules. . . ."[5] *State* v. *Bridenhager* (1972), 257 Ind. 699, 279 N.E.2d 794.

Neeley's statutory springboard and initial premise for his proposition that civil Rule TR. 52(A) is applicable to criminal cases is IC 1971, 35-1-49-1, Ind. Ann. Stat. § 9-2407 (Burns 1956), which provides:

> "In all criminal cases where no special provision has been made in this act, the rules of pleading and practice in civil actions shall govern, *so far as applicable.*" (Our emphasis).

The new civil Rule TR. 52(A) of the Indiana Rules of Procedure adopts prior Indiana practice for the most part. Professor Harvey has commented in Harvey, 3 INDIANA PRACTICE § 52.1 at 425-426:

> "One of the principal reasons and purposes of the provision is to have the record show the basis of the trial court's decision so that on review the appellate court may more readily understand the former's view of the controversy. And of course, findings of fact make definite just what was decided when future questions of estoppel and res judicata may be raised."

Criminal defendants have constitutional safeguards such as double jeopardy to protect them from future prosecution. Criminal statutes contain the factual elements that must be proven by the State beyond a reasonable doubt. Civil issues may be more complex and identified only by common law decisions. When identified, they need only be proven by a pre-

---

5. See IC 1971, 34-5-2-1, Ind. Ann. Stat. § 2-4718 (Burns 1968). The most recent session of the Indiana General Assembly has, however, passed proposed criminal procedure provisions which have neither attempted nor suggested incorporation of Rule TR. 52(A). See IC 1971, 35-4.1-2-2; as added by Acts 1973, P.L. 325, § 4. Pursuant to IC 1971, 34-5-2-1, *supra*, these rules will not become effective in the trial courts of Indiana until approved by the Supreme Court of Indiana.

ponderance of the evidence. Findings of close questions of fact are admittedly helpful in civil cases.[6]

In *People* v. *Thomas* (1972), 387 Mich. 368, 197 N. W. 2d 51, 54, the Supreme Court of Michigan rejected the application of its civil rule, similar to our civil Rule TR. 52(A), to criminal cases. The Supreme Court of Michigan stated:

> "The verdict of guilty necessarily encompasses a finding against the defendant on every element of the crime. If sufficient proof does not exist from which the trier-of-the fact could find every element of the crime beyond a reasonable doubt, a conviction will be reversed, regardless of whether a judge renders the judgment or a jury brings in the verdict. . . ."

The Supreme Court of Michigan concluded in *People* v. *Thomas, supra,* 197 N. W. 2d at 56 that:

> "In view of the historical nature of the criminal verdict and the safeguards against erroneous factual determinations embodied in the requirement that there be sufficient proof on each element of the crime, we hold that no special findings of fact are required in judge-tried criminal cases."

We hold that civil Rule TR. 52(A) is not applicable to criminal cases. Therefore, the trial court did not commit error when it overruled Neeley's motion for findings and conclusions.

## V.

## DECISION OF THE COURT

ISSUE ONE: Our examination of the record discloses that there was sufficient evidence of probative value from which the trier of fact could have reasonably inferred that Neeley was guilty beyond a reasonable doubt.

---

6. Federal Criminal Rule 23(C) provides for findings in court tried cases, but the development of "federal criminal law" historically is different than that in the several states. The federal rule has been subjected to much criticism. See 6 N.Y.U. Inst. on Fed. R. Crim. P. 173, 198-199 (1946); Orfield, Criminal Procedure from Arrest to Appeal 396 (1947); Dession, The New Federal Rules of Criminal Procedure: II, 56 YALE L.J. 197, 225 (1947).

ISSUE TWO: Civil Rule TR. 52(A) of the Indiana Rules of Procedure is not applicable to criminal cases. The trial court did not commit reversible error when it denied Neeley's motion for special findings and conclusions.

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C.J. and Sharp, J., concur.

NOTE.—Reported at 297 N.E.2d 847.