John William WISE, Jr.,
Appellant-Defendant,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 2–976–A–351.

Court of Appeals of Indiana,
Second District.

March 4, 1980.

Rehearing Denied April 2, 1980.

Harriette Bailey Conn, Public Defender, Eugene C. Hollander, Deputy Public Defender, Indianapolis, for appellant-defendant.

Theodore L. Sendak, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SULLIVAN, Judge.

John William Wise, Jr. (Wise) appeals his convictions of aggravated assault and battery,[1] drawing a weapon or committing injury upon a police officer,[2] theft,[3] and automobile banditry.[4] The issues presented for review are whether each of the jury verdicts is supported by sufficient evidence. We affirm.

Wise and two companions drove from Indianapolis to the Mounds Mall shopping center in Anderson for the purpose of shoplifting. Marvin McCorkle (McCorkle), an Anderson police officer working as a security guard for the H. P. Wasson's store in the mall, observed Wise "double hang" a suit, i. e., place two suits on one hanger and enter a dressing room. McCorkle watched through a security window above the dressing room as Wise wrapped one of the suits around his body and concealed it beneath his own clothing. Wise returned the other suit to the rack and left the store.

McCorkle stopped Wise outside the door of the Wasson's store, identified himself as a police officer and asked Wise to accompany him back inside the store. Once inside, McCorkle advised Wise that they needed to talk about some items he might have taken. Wise dropped his trousers and the concealed suit fell onto the floor. A scuffle ensued between the two. McCorkle managed to draw his weapon. Wise bit the thumb of McCorkle's gun hand and eventually gained control of the weapon. Wise turned the gun on McCorkle and backed out of the store, through the mall area and into the parking lot. McCorkle followed Wise, imploring him to drop the gun and surrender.

---

1. I.C. 35–13–3–1 (Burns Code Ed. 1975).

2. I.C. 35–21–4–2 (Burns Code Ed. 1975).

3. I.C. 35–17–5–3 (Burns Code Ed. 1975).

4. I.C. 35–12–2–1 (Burns Code Ed. 1975).

Wise repeatedly threatened to kill McCorkle if he did not back off and when the two men reached the parking lot, Wise fired a shot which struck the pavement near McCorkle's feet.

Tom Turner (Turner), a private investigator, free lance photographer and deputy coroner for Madison County, heard a report on his police radio that Officer McCorkle needed assistance and drove to the mall. Turner drove up, got out of his car, drew his weapon and put a shell in the chamber, but the gun jammed. Wise demanded that Turner drop his gun, but Turner refused and turned his back to Wise as he worked to free his weapon. McCorkle then grabbed Wise and another scuffle began. Wise apparently pulled the trigger of the gun in his hand, but McCorkle managed to prevent its discharge by placing his hand in front of the hammer. Wise pushed McCorkle to the ground and ran toward his companion's car; McCorkle ran after him.

When Wise reached the car, another fight broke out between the two. A shot was fired and McCorkle again was pushed to the ground. McCorkle took refuge with Turner behind Turner's car. Turner and Wise exchanged gunfire and Wise and his companions drove away. Turner and McCorkle followed in Turner's car, but the chase was aborted when McCorkle lost consciousness and was taken to the hospital.

Wise was charged with assault with intent to kill, using a firearm and committing injury upon an officer, theft, and automobile banditry. He was granted a change of venue to the Grant Circuit Court where he was convicted after trial by jury of aggravated assault and battery, drawing a weapon or committing injury upon an officer, theft, and automobile banditry, and was sentenced to four concurrent terms of 1–5 years imprisonment.

I.

Wise argues that his conviction of aggravated assault and battery is not supported by sufficient evidence that he intentionally or knowingly inflicted great bodily harm or disfigurement upon another person. He in-

sists his actions were justified by the need to protect himself from the overt and uncalled-for physically threatening demeanor of Officer McCorkle and that the bite on McCorkle's thumb does not support a finding of great bodily harm or disfigurement.

When reviewing the sufficiency of the evidence in a criminal proceeding, we neither weigh the evidence nor judge the credibility of the witnesses, but look to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom; when there is substantial evidence of probative value to support the jury verdict, the judgment of the trial court will be affirmed. *Tessely v. State* (1978) Ind., 370 N.E.2d 907; *Griffin v. State* (3d Dist. 1978) Ind.App., 372 N.E.2d 497.

■ Our Supreme Court held in *Defries v. State* (1976) 264 Ind. 233, 342 N.E.2d 622, that a conviction of aggravated assault and battery under I.C. 35–13–3–1 does not require proof of the specific intent to inflict great bodily harm or disfigurement. Rather, it requires proof of the seriousness of the unpermitted touching. The Court explained that:

> "Our statute requires that great bodily harm or disfigurement be *inflicted*. One who merely intends to tie up his victim and pound him about the head with a meat tenderizing tool has not committed the crime of aggravated assault in Indiana. On the other hand, if one throws a piece of chalk at the legendary victim with an eggshell skull, and the chalk strikes the victim and fractures his skull, the perpetrator would be guilty under our statute even though he did not intend to do great bodily harm." (original emphasis) *Id.*, 264 Ind. at 244–45, 342 N.E.2d at 629–30.

The required intent may be inferred from the intentional doing of an act, the probable result of which will be a rude or insolent touching of the person of another. *Id.*, 264 Ind. at 239, 342 N.E.2d at 626.

■ Wise argues that his actions were justified as self-defense; that he was provoked or entrapped by Officer McCorkle's

physically threatening demeanor and use of excessive force, thereby negating any criminal intent on his part. One may not be validly convicted of an assault and battery if he has acted in self-defense. *See, Johnson v. State* (1971) 256 Ind. 579, 271 N.E.2d 123, but in the instant case, the person assaulted was a police officer attempting to arrest Wise. Due to the status of the victim and the circumstances surrounding the assault and battery, Wise's right to invoke self-defense necessarily involves his right to forcibly resist arrest.

Indiana has recognized the common law right of an individual to resist an unlawful arrest. At common law, a person was permitted to resist an unlawful arrest with reasonable force. *Heichelbech v. State* (1972) 258 Ind. 334, 281 N.E.2d 102; *Williams v. State* (3d Dist. 1974) 160 Ind.App. 294, 311 N.E.2d 619. In *Fields v. State* (1st Dist. 1978) Ind.App., 382 N.E.2d 972, however, the Court held that a private citizen may not use force in resisting a peaceful arrest by a person whom he knows or has good reason to know is a police officer performing his duties, regardless whether the arrest was legal or illegal. The *Fields* Court cautioned that it was not addressing issues that arise when an arrestee apprehends that the arresting officer is using excessive force and that unless the arrestee defends himself, he is likely to suffer great bodily harm or death. Indeed, in several modern cases, other jurisdictions have recognized the general rule that an arrestee may use reasonable force to defend himself against the use of greater force by the arrester than is required to effect the arrest. *See generally*, Anno.: 44 A.L.R.3d 1078 (1972).

In *Heichelbech v. State* (1972) 258 Ind. 334, 281 N.E.2d 102, our Supreme Court rejected a tendered instruction which would have permitted the jury to consider the arresting officer's subjective intent in determining whether the defendant's actions were justified as self-defense, saying:

"*Clearly, if the arrest was lawful, the accused should not have resisted, regardless of his assessment of the arresting officer's personal feelings and motives. Malice* might cause one to use more force than was necessary, but that is not the issue here." (original emphasis) *Id.*, 258 Ind. at 337, 281 N.E.2d at 104.

In *Birtsas v. State* (2d Dist. 1973) 156 Ind. App. 587, 297 N.E.2d 864, we affirmed a conviction of assault and battery against a claim of self-defense involving the biting of the hand of the arresting officer. We acknowledged that the officer had not used excessive force in making the arrest. While neither *Heichelbech* nor *Birtsas* explicitly states so, they clearly imply that Indiana adheres to the general rule allowing an arrestee to resist the arrester's use of excessive force by the use of reasonable force to protect himself against great bodily harm or death.

■ Wise argues that the facts are clear and uncontroverted that his actions were prompted by fear for his own safety, that his actions were justified as self-defense as a matter of law. While the jury must look at the situation from the defendant's viewpoint in deciding whether the defendant acted in self-defense and is free to believe or disbelieve his testimony as to what his viewpoint was, *Lee v. State* (3d Dist. 1973) 156 Ind.App. 569, 297 N.E.2d 890, we may look only to the evidence most favorable to the State in determining whether Officer McCorkle used excessive force in arresting Wise and thereby led him to reasonably believe he would suffer great bodily harm or death unless he defended himself. *See, White v. State* (1976) 265 Ind. 32, 349 N.E.2d 156.

■ The evidence most favorable to the State has been set forth. While the record does not disclose who struck the first blow in the fracas, the evidence does show that any force used by Officer McCorkle came after Wise attempted to flee from the officer's custody. The jury was instructed that pursuant to I.C. 35–1–19–3 (Burns Code Ed.1975) an officer may use necessary means to effect an arrest if the defendant either flees or forcibly resists after notice of the officer's intention to arrest him. Wise himself testified that McCorkle drew his

weapon and allegedly uttered a racial slur after "I had got more violent with him and perhaps he felt that he couldn't control me . . . ." We cannot say, as a matter of law, that Officer McCorkle used unreasonable or excessive force in attempting to arrest Wise thereby justifying Wise's actions as self-defense. We hold there was sufficient evidence from which the jury could have inferred that Wise intentionally did an act, the probable result of which would be a rude or insolent touching of Marvin McCorkle.

Wise contends that the injuries he inflicted upon McCorkle do not rise to the level of "great bodily harm or disfigurement." Our Supreme Court has held that "great bodily harm" must be taken in the ordinary and usual sense. *Froedge v. State* (1968) 249 Ind. 438, 233 N.E.2d 631. It is:

"*[G]reat* as distinguished from *slight, trivial, minor* or *moderate harm, and* as such *does not include mere bruises as are likely to be inflicted* in a simple assault and battery . . ." (original emphasis) *Id.*, 249 Ind. at 445, 233 N.E.2d at 636.

Similarly, we held in *Allison v. State* (2d Dist. 1973) 157 Ind.App. 277, 299 N.E.2d 618, that the disjunctive element of "disfigurement" is not a technical word and should be considered in its ordinary sense. Disfigurement is that "which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, mishappen or imperfect or deforms in some manner." *Id.*, 157 Ind.App. at 281, 299 N.E.2d at 621.

To fulfill the statutory requirement of either great bodily harm or disfigure-ment, it is not necessary that the injury be so great that it is permanent or disabling. *Barbee v. State* (1977) Ind., 369 N.E.2d 1072; *Valentine v. State* (1971) 257 Ind. 197, 273 N.E.2d 543; *Houston v. State* (1st Dist. 1976) Ind.App., 342 N.E.2d 684. Failure of a blow to draw blood is not dispositive; when the injury inflicted is of such a serious and violent nature that it could reasonably result in the loss of health, life or limb, a jury finding of great bodily harm will be sustained. *Barbee v. State, supra.*

In many instances, a bite on the thumb would not appear serious enough to constitute great bodily harm or disfigurement, but the evidence most favorable to the State in this case shows otherwise. The bite was severe enough to cause McCorkle to lose feeling in his right hand and to lose control and possession of his gun. Approximately ten minutes later he fainted from shock and loss of blood caused by the bites. He was taken to a hospital where his hand was soaked, cleansed, medicated, innoculated and bandaged. Turner described the bleeding as severe and profuse. Scars were still visible at the time of the trial, some two years after the injuries were inflicted. We cannot say that no reasonable jury could find beyond a reasonable doubt that Wise inflicted great bodily harm or disfigurement on Marvin McCorkle.[5]

## II.

In attacking his conviction for drawing a weapon or committing injury upon an officer, Wise argues that there is insufficient evidence that he drew, used or at-

---

5. We are not unmindful of the apparent variance between the charge of assault with intent to kill and the conviction of aggravated assault and battery. Aggravated assault and battery is not a necessarily lesser-included offense of assault and battery with intent to kill absent an allegation in the charging instrument of great bodily harm or disfigurement. *Allison v. State, supra.* Not only does the charging instrument here not allege infliction of great bodily harm or disfigurement, it fails to allege any unlawful touching, an element of simple assault and battery. *Id.* The original charge was evidently directed toward Wise's use of the weapon after he wrested it from McCorkle's control. Wise did argue in his Motion to Correct Errors that there was no evidence that any battery had been committed with the weapon, but confines his argument before us to self-defense and whether the bite on the thumb constituted great bodily harm or disfigurement. Examination of the record discloses that Wise made no objection to the trial court's instructing the jury on aggravated assault and battery as a lesser-included offense of assault with intent to kill and further that he specifically requested that such an instruction be given.

tempted to use a firearm, deadly or dangerous weapon, or committed bodily injury upon a police officer, and that his actions were justified as self-defense.[6] For the reasons discussed earlier, we hold that his actions were not justified as self-defense.

I.C. 35–21–4–2 declares that:

"Whoever shall draw, use or attempt to use a firearm, deadly or dangerous weapon, or commit a bodily injury upon any peace or police officer of this state . . knowing him to be such officer . . . while assaulting, resisting, opposing, obstructing, preventing, impeding or interfering with any peace or police officer, when such officer is arresting or attempting to arrest any person, or while such officer is engaged in the execution of any of the duties of such officer, shall be deemed guilty of a felony . . . ."

Examining the evidence most favorable to the State, we find sufficient evidence that Wise used or attempted to use a firearm upon McCorkle, knowing him to be a police officer, while assaulting or resisting him when he was attempting to arrest Wise. The verdict, however, found Wise guilty of "drawing a weapon or committing injury upon officer"—the italicized heading or title of the statute. We cannot say the instant verdict was a general finding of guilt equivalent to a pronouncement of "guilty as charged" which would allow us to affirm a conviction of using a firearm and committing bodily injury upon an officer if the evidence supported such a finding. *See, Lee v. State* (1921) 191 Ind. 515, 132 N.E. 582. Therefore, we will examine the record to determine whether there is sufficient evidence that Wise either drew a weapon or committed bodily injury upon McCorkle.

In *Dunkle v. State* (1961) 241 Ind. 548, 173 N.E.2d 657, our Supreme Court distinguished the words "draw", "point" and "aim" as they were used in various penal statutes, rejecting the appellant's argument that to draw meant the same as to point, and concluding that:

"[T]he legislature by specifically referring to the drawing of weapons of the character enumerated had in mind the *act by which the particular weapon is taken out or removed for use* from the enclosure which contained it." (Original emphasis.) *Id.*, 241 Ind. at 552, 173 N.E.2d at 659.

There is no evidence in the record that Wise removed McCorkle's weapon from its holster or other enclosure. In fact, McCorkle "drew" the weapon himself. Wise wrested it from his grasp, but this cannot constitute "drawing" within the meaning of the statute.

There is sufficient evidence that Wise committed bodily injury upon an officer. The Court in *Neeley v. State* (3d Dist. 1973) 156 Ind.App. 489, 493, n. 3, 297 N.E.2d 847, 850, n. 3, defined "bodily injury" within the context of I.C. 35–21–4–2 as:

"Any touching of the person of another against his will with physical force, in an intentional, hostile and aggressive manner, or a projecting of such force against his person . . . . Any impairment of physical condition of another's body or physical pain or illness, but does not include minute disturbance of nerve centers caused by fear, shock or other emotion."

While resisting Officer McCorkle's efforts to arrest him and knowing that McCorkle was an Anderson police officer, Wise struck McCorkle and bit his thumb, causing severe bleeding. We find the evidence clearly sufficient to support the verdict.

### III.

Wise asserts that there is insufficient evidence to sustain his conviction of

---

**6.** We note that Wise does not complain of the apparent variance between the charge of using a firearm and committing bodily injury upon an officer and the verdict finding him guilty of drawing a weapon or committing injury upon an officer, nor does he complain of the "or" in the jury verdict. Cf. *Ezzell v. State* (1965) 246 Ind. 268, 205 N.E.2d 145. He merely alleges that there is insufficient evidence that he did any of the acts proscribed by the statute and directs his arguments to the issue of self-defense in resisting an arrest effectuated by excessive force. The State responds only to the issue of self-defense and argues that Wise used excessive force in resisting arrest by shooting at Officer McCorkle.

theft, specifically that there is insufficient evidence that he had the requisite control over the property stolen or the intent to deprive the owner of the use or benefit of the property.

The evidence most favorable to the State is that McCorkle observed Wise "double hang" a suit and enter a dressing room in the Wasson's store. Through a security window above the dressing room, McCorkle saw Wise wrap one of the suits around his body and conceal it beneath his own clothing. Wise left the dressing room, spoke briefly with a store employee, walked out of the store without attempting to pay for the concealed suit, and was stopped by McCorkle outside the store.

In *Taylor v. State* (1970) 255 Ind. 245, 263 N.E.2d 542, our Supreme Court held evidence that the appellant placed three purses in a shopping bag, concealed them with tissue paper and proceeded to exit from the store without paying for the purses to be sufficient to sustain a conviction of theft. We similarly hold that the evidence of concealment and failure to pay before leaving the store is sufficient to support the determination that Wise obtained unauthorized control of the suit with the intent to permanently deprive the owner of its use or benefit.

### IV.

Wise argues that his conviction of automobile banditry must be vacated because there is insufficient evidence of a subsidiary felony to support the automobile banditry charge, citing *Coleman v. State* (1975) 264 Ind. 64, 339 N.E.2d 51. In the case before us, the affidavit charged in pertinent part that Wise:

> "unlawfully and feloniously committed the crime of theft, having at the time near the premises of Mounds Mall Shopping Center, 109 By-Pass, Anderson, Madison County, Indiana, a 1970 Mercury automobile, by use of which said defendant intended to escape . . . . "

Because we have determined that there is sufficient evidence to support the conviction of theft, Wise's argument must fail.

Judgment affirmed.

BUCHANAN, C. J., concurs.

SHIELDS, J., dissents with opinion.

SHIELDS, Judge, dissenting.

I dissent from the majority's affirmance of Wise's conviction of aggravated assault and battery.

Count I of the information charged Wise with assault with intent to kill based upon a factual statement involving his discharge of a firearm. The majority affirms his conviction of aggravated assault and battery under this count reviewing, for sufficiency of evidence purposes, evidence of a bite on the police officer's thumb—a far cry from the offense charged and the factual allegations constituting the offense charged.

The situation here is much more than an "apparent variance" as stated by the majority. Without question, Count I of the information did not charge nor include the offense of which Wise was convicted.

Encompassed by constitutional guarantee is the concept that a defendant in a criminal prosecution shall be advised of the nature of the charge against him in order that he might prepare an adequate defense as well as be protected against being twice put in jeopardy. This concept is severely violated by condoning a conviction of a crime not charged. Hence, conviction of an offense neither charged nor included within the criminal conduct alleged constitutes a denial of due process and is contrary to law. *McFarland v. State*, (1978) Ind.App., 384 N.E.2d 1104.

Had Wise objected to the trial court's instruction describing aggravated assault and battery as a lesser offense of Count I, even the majority would reverse the conviction. However, as the majority properly observes, Wise not only failed to object to the instruction, he tendered a similar instruction which the trial court refused. The question, then, is whether the defendant, by either his silence (failing to object) or his overt act (requesting an instruction), can effect the amendment of the informa-

tion to state a new and different offense from that charged. If the amendment cannot be so effected, there is error, but is it fundamental error that we review *sua sponte*? Contrary to the majority's position, I believe it is.

By statute an information may not be amended "in any respect which changes the theory or theories of the prosecution as originally stated, or changes the identity of the offense charged . . . ." I.C. 35–3.-1–1–5(e) (Burns Code Ed. 1979 Repl.). The language of the statute is mandatory. A charge of assault with intent to kill but a conviction of aggravated assault and battery clearly involves a change in the identity of the offenses and is therefore statutorily prohibited.

In addition, the trial court must be charged with the responsibility of instructing the jury as to all matters of law necessary for the consideration of their verdict. This includes an instruction setting forth the offense with which the defendant is charged and its elements. If the trial court undertakes to extend the charge to include lesser included offenses which the evidence supports, it has, in my opinion, an absolute, non-delegable duty to do so correctly. To quote Judge Lybrook in another context:

> "[A trial judge] should avoid being side-tracked by a loquacious defendant who professes to understand his rights perfectly without having been informed of them [who solicits offenses as lesser included when they are not]." *Pursifull v. State* (1973) 157 Ind.App. 560, 567, 301 N.E.2d 226, 230–31.

Thus, the trial court's giving instructions advising the jury aggravated assault and battery was an included offense and giving its elements, as well as Wise's conviction of aggravated assault and battery, is clearly erroneous and contrary to law. And just as clearly, conviction of a charge which is not a properly includable offense is fundamental error. This is true even when the defendant, as did Wise, fails to properly object to the instruction enumerating the lesser included offenses. *Gutowski v. State* (1976) Ind.App., 354 N.E.2d 293.

While I agree there is a distinction between tendering an instruction and failing to object, it is a distinction without substance in the present context. In either situation there is a violation of a statutory mandate and a trial court's failure to fulfill its own *sua sponte* supervisory duty.

I further believe the error is harmful and requires a reversal of conviction of aggravated assault and battery. A discussion of prejudice to Wise is unnecessary, if not inappropriate. In a situation where a defendant is convicted of a crime not charged, there is *per se* prejudice. I am unwilling to distinguish this situation from one where a defendant is not fully advised by the *trial court* of his constitutionally and statutorily protected rights in a plea of guilty and, as a result, his plea is voidable. Does the defendant invite error by pleading guilty without being properly advised or at least objecting to the trial court's failure to properly advise him at the time of his plea? In that instance we characterize the trial court's error as prejudicial fundamental error.

The majority's position has the effect of delegating control over his prosecution and trial to the defendant. Unhappy with a charge of assault with intent to kill, which carries an indeterminate penalty of not less than two years nor more than fourteen years upon conviction, Wise was able to muddy the water of jury deliberation by adding aggravated assault and battery to the otherwise clear-cut assault with intent to kill, assault, or not guilty. A defendant is most assuredly going to sit quietly or indeed vocally seek as many offenses as possible carrying penalties less than the penalty for the offense charged because the more alternatives available to a jury the less likely the most severe penalty will be imposed. But who controls the trial? I suggest it should be the trial judge. I fully realize this argument can be used against my position. The majority says by sitting quietly or vocally seeking an incorrect lesser offense the defendant invites the error and cannot now be heard to complain. Generally I accept the doctrine of invited error, but not when the effect is a total aberration of a trial on the charge made.